# 26-3757

IN THE

# United States Court of Appeals

FOR THE NINTH CIRCUIT

KRISTIN BRIDE; A.O., by and through her legal guardian Jane Does 3; ESTATE OF CARSON BRIDE, by and through his appointed administrator KRISTIN BRIDE; A.K., by and through her legal guardian Jane Doe 1; A.C., by and through her legal guardian Jane Doe 2,

*Plaintiffs-Appellants,*

TYLER CLEMENTI FOUNDATION, on behalf of themselves and all others similarly situated,

*Plaintiff,*

*v.*

YOLO TECHNOLOGIES, INC; GREGOIRE HENRION,

*Defendants-Appellants,*

SNAP INC., LIGHTSPACE, INC., DOES, 1-20,

*Defendants.*

*Appeal From the United States District Court*
*for the Central District of California*
*Case No. 2:21-cv-06680-FWS-MBK, Judge Fred W. Slaughter*

## BRIEF FOR PLAINTIFFS-APPELLANTS

Patrick K. Lin
Andrew Bourne
Tia Vaish
WASHINGTON SQUARE
LEGAL SERVICES, INC.
New York University School of Law
245 Sullivan Street, 5th Floor
New York, New York 10012
212-998-6430
pkl236@nyu.edu

Juyoun Han
Prisca Sielaff
EISENBERG & BAUM, LLP
*Attorneys for Plaintiffs-Appellants*
24 Union Square East, Penthouse
New York, New York 10003
212-353-8700
jhan@eandblaw.com

PHP (212) 719-0990
appeals@phpny.com

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..... iii

INTRODUCTION ..... 1

JURISDICTIONAL STATEMENT ..... 2

FACTUAL BACKGROUND ..... 2

A. YOLO: A One-Sided, Anonymous Messaging App Propped up by Illusory Safety Promises ..... 2

Lead Plaintiff: The Estate of Carson Bride ..... 6

Plaintiffs Addison Kennedy, Amber Casperson, and A.O., and Third-Party Witness Maddie Freeman ..... 7

Third Amended Complaint ..... 9

District Court's Decision ..... 9

PROCEDURAL HISTORY ..... 11

STATEMENT OF THE ISSUES ..... 13

STANDARD OF REVIEW ..... 13

SUMMARY OF ARGUMENTS ..... 13

ARGUMENT ..... 15

I. The Lower Court Erroneously Granted Henrion's Motion to Dismiss ..... 15

A. Plaintiffs' Claims Against Henrion Should Be Related Back To the Original Complaint ..... 15

1. Plaintiffs satisfy the notice and mistake requirements of FRCP 15(c)(1)(C) ..... 17

2. Plaintiffs Satisfy FRCP 15(c)(1)(C)(ii)'s Knowledge Standard ........ 18

3. Plaintiffs' Misidentification Falls Squarely Within Rule 15(c)(1)(C)(ii) ........ 19

B. The Statute of Limitations Should Be Equitably Tolled Because Discovery Was Stayed for Nearly Three Years After this Litigation Commenced ........ 24

C. Defendants Should be Estopped from Raising a Statute of Limitations Defense Because They Actively Withheld Crucial Information Pertaining to Henrion's Personal Liability ........ 28

II. The Lower Court Erroneously Denied Plaintiffs' Motion For Default Judgment ........ 31

A. Yolo's Statements to Reveal and Remove Bullies Were Actionable Misrepresentations ........ 32

1. Yolo's Statements Misrepresented the Fact That It Had No Ability Whatsoever to Reveal and Remove Bullies ........ 35

2. Yolo Intended for Plaintiffs to Rely on its Promises, and Such Reliance Was Justifiable ........ 38

3. The Sum of Money at Stake is Commensurate to Plaintiffs' Well-Accounted Suffering ........ 45

III. The District Court Erred in Denying Class Certification ........ 48

A. Typicality & Adequacy Are Satisfied Under the Uniform Exposure Theory of Liability ........ 48

B. Commonality & Predominance Are Satisfied By Common Questions Arising Out Of Defendant-Appellee's Uniform Misrepresentations and Putative Class Members Uniform Exposure ........ 55

C. The Class's Shared Interests and Manageability Make Centralized Adjudication Superior....................58

CONCLUSION....................61

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Addison v. State*,
21 Cal. 3d 313 (1978) ....................................................................................25

*Alliance Mortgage Co. v. Rothwell*,
10 Cal. 4th 1226 (1995) ..........................................................................41, 42

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)........................................................................................55

*Beckwith v. Dahl*,
205 Cal. App. 4th 1039 (Cal. Ct. App. 2012).................................................41

*Boeken v. Philip Morris, Inc.*,
127 Cal. App. 4th 1640 (Cal. Ct. App. 2005)..................................................41

*Bogard v. TikTok Inc.*,
No. 24-cv-03131, 2025 WL 3637035 (N.D. Cal. 2025)............................35, 36

*Bride v. Yolo*,
112 F.4th 1168 (9th Cir. 2024) ...........................................................*passim*

*Brink v. First Credit Res.*,
57 F. Supp. 2d 848 (D. Ariz. 1999) .................................................................20

*Brome v. California Highway Patrol*,
44 Cal. App. 5th 786 (2020) ...........................................................................26

*Brown v. Hain Celestial Grp., Inc.*,
No. C 11-03082-LB, 2014 WL 6483216 (N.D. Cal. Nov. 18, 2014)................59

*Byrd v. Abate*,
964 F. Supp. 140 (S.D.N.Y. 1997) ..................................................................21

*Chisley v. Orkin Exterminating Co.*,
2011 WL 2893055 (Cal. Ct. App. July 20, 2011) ...........................................43

*Coastal Abstract Serv. v. First Am. Title Ins. Co.*,
173 F.3d 725 (9th Cir. 1999) ..........................................................................36

*Conroy v. Regents of University of California*,
203 Cal. 4th 1244 (2009) ....................44

*Curtis v. Irwin Indus.*,
Inc., 913 F.3d 1146, 1151 (9th Cir. 2019) ....................13

*Daffin v. Ford Motor Co.*,
458 F.3d 549 (6th Cir. 2006) ....................53

*Deposit Guar. Nat'l Bank v. Roper*,
445 U.S. 326 (1980)....................60

*Doe v. Whelan*,
No. 3:08–cv–846, 2010 WL 5093102 (D. Conn. Dec. 8, 2010) ....................22

*Downs v. Dep't of Water & Power*,
58 Cal. App. 4th 1093 (1997) ....................26

*Eitel v. McCool*,
782 F.2d 1470 (9th Cir. 1986) ....................31, 45, 46, 48

*Eminence Cap., LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) ....................16

*Engalla v. Permanente Med. Grp., Inc.*,
15 Cal. 4th 951 (1997) ....................39, 41

*Frances T. v. Village Green Owners Assoc.*,
42 Cal. 3d 490 (1986) ....................16

*G.F. Co. v. Pan Ocean Shipping Co.*,
23 F.3d 1498 (9th Cir. 1994) ....................20

*Geddes v. United Fin. Grp.*,
559 F.2d 557 (9th Cir. 1977) ....................31

*Gonzales v. Nat. Factors Nutritional Prods. Inc.*,
No. 2:24-CV-02584, 2024 WL 4609853 (C.D. Cal. June 28, 2024) ....................39

*Gray v. Don Miller & Assocs., Inc.*,
35 Cal. 3d 498 (1984) ....................41

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ....................49, 52

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) ....................49

*Hoffman v. 162 North Wolfe LLC*,
228 Cal. App. 4th 1178 (Cal. Ct. App. 2014) ....................41

*Holmberg v. Armbrecht*,
327 U.S. 392 (1946) ....................25

*Hopkins v. Kedzierski*,
225 Cal. App. 4th 736 (2014) ....................26

*Hoxworth v. Blinder, Robinson & Co.*,
980 F.2d 912 (3d Cir. 1992) ....................52

*In re Anderson*,
641 B.R. 1 (Bankr. S.D.N.Y. 2022) ....................52

*In re ATM Fee Antitrust Litig.*,
768 Fed. Supp. 2d 984 (N.D. Cal. 2009) ....................21

*In re LLS Am. LLC*,
701 Fed. App'x. 565 (9th Cir. 2017) ....................18, 25

*In re Social Media Adolescent Addiction/*
*Personal Injury Products Liability Litigation*,
753 F. Supp. 3d 849 (N.D. Cal 2024) ....................38

*Korn v. Royal Caribbean Cruise Line, Inc.*,
724 F.2d 1397 (9th Cir. 1984) ....................22

*Krupski v. Costa Crociere S. p. A.*,
560 U.S. 538 (2010) ....................*passim*

*Lazar v. Superior Ct.*,
12 Cal. 4th 631 (Cal. 1996) ....................37

*Lehman v. Calls After Hours, LLC*,
No. 1:18-cv-2601-SO, 2019 WL 3982950
(N.D. Ohio Aug. 16, 2019) ....................22, 61

*Leonard v. Gen. Motors L.L.C.*,
504 F. Supp. 3d 73 (D. Conn. 2020)......22

*Ligaya Ronduen v. The Geo Group, Inc.*,
No. EDCV 23-481, 2023 WL 5506001 (C.D. Cal 2023)......44

*LL B Sheet 1, LLC v. Loskutoff*,
362 F. Supp. 3d 804 (N.D. Cal. 2019)......41

*Louisiana-Pac. Corp. v. ASARCO, Inc.*,
5 F.3d 431 (9th Cir. 1993)......21

*Lukovosky v. City & Cnty. of S.F.*,
535 F.3d 1044 (9th Cir. 2008)......25, 29

*Lytle v. Nutramax Lab'ys, Inc.*,
114 F.4th 1011 (9th Cir. 2024)......57

*Milby v. Templeton (In re Milby)*,
875 F.3d 1229 (9th Cir. 2017)......25

*Myers v. Checksmart Fin. LLC*,
701 Fed. App'x. 588 (9th Cir. 2017)......19

*Navarra v. Marlborough Gallery, Inc.*,
No. 10 Cv. 7547, 2013 WL 1234937 (S.D.N.Y. Mar. 25, 2013)......18, 25

*Noohi v. Johnson & Johnson Consumer Inc.*,
146 F.4th 854 (9th Cir. 2025)......57

*PepsiCo, Inc. v. Cal. Sec. Cans*,
238 F. Supp. 2d 1172 (C.D. Cal. 2002)......45

*Rodman v. Safeway, Inc.*,
2014 WL 988992 (N.D. Cal. 2014)......55

*Rowe v. Educ. Credit Mgmt. Corp.*,
559 F.3d 1028 (9th Cir. 2009)......13

*Rustico v. Intuitive Surgical, Inc.*,
993 F.3d 1085 (9th Cir. 2021)......29

*Saint Francis Mem'l Hosp. v. State Dep't of Pub. Health*,
9 Cal. 5th 710 (2020) ....................................................................26, 27

*Sali v. Corona Reg'l Med. Ctr.*,
909 F.3d 996 (9th Cir. 2018) ..........................................................49

*Sec. Officers Serv., Inc. v. State Comp. Ins. Fund*,
17 Cal. App. 4th 887 (1993) ...........................................................43

*Seeger v. Odell*,
18 Cal. 2d 409 (1941) ....................................................................41, 42

*Simpson v. Fireman's Fund Ins. Co.*,
231 F.R.D. 391 (N.D. Cal. 2005).....................................................49

*State Comp. Ins. Fund v. Workers' Comp. Appeals Bd.*,
40 Cal. 3d 5 (Cal. 1985).................................................................28

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ..........................................................53

*Stearns v. Ticketmaster Corp.*,
655 F.3d 1013 ................................................................................57

*Steinke v. Bank of Am., Nat'l Ass'n*,
2013 WL 3776438 (Cal. Ct. App. July 17, 2013) ...............................44

*Tait v. BSH Home Appliances Corp.*,
289 F.R.D. 466 (C.D. Cal. 2012).....................................................60

*Tarmann v. State Farm Mut. Auto. Ins. Co.*,
2 Cal. App. 4th 153 (Ct. App. 1991) ...............................................37

*TeleVideo Sys., Inc. v. Heidenthal*,
826 F.2d 915 (9th Cir. 1987) ..........................................31, 41, 42, 57

*Tyson Foods v. Bouaphakeo*,
577 U.S. 442 (2016).......................................................................56

*Vogel v. Rite Aid Corp.*,
992 F. Supp. 2d 998 (C.D. Cal. 2014) ..............................................45

*Whitaker v. Bennett Law, PLLC*,
2014 WL 5454398 (S.D. Cal. Oct. 27, 2014) .......... 61

*Whiteley v. Philip Morris Inc.*,
117 Cal. App. 4th 635 (2004) .......... 39

*Wolin v. Jaguar Land Rover N. Am., LLC*,
617 F.3d 1168 (9th Cir. 2010) .......... 53, 60

*Yelp Inc. v. Catron*,
70 F. Supp. 3d 1082 (N.D. Cal. 2014) .......... 45

**Statutes**

28 U.S.C. § 1291 .......... 2

Communications Decency Act § 230 .......... *passim*

**Rules**

Fed. R. App. P. 4(a)(1)(A) .......... 2

Fed. R. Civ. P. 12(b)(6) .......... 13

Fed R. Civ. P. 15 .......... 17, 19, 22

Fed R. Civ. P. 15(a) .......... 16

Fed. R. Civ. P. 15(c) .......... *passim*

Fed R. Civ. P. 15(c)(1)(C) .......... 13, 17

Fed R. Civ. P. 15(c)(1)(C)(ii) .......... 18, 19, 22

Fed. R. Civ. P. 23(a)(2) .......... 55, 58

Fed. R. Civ. P. 23(a)(3) .......... 49

Fed. R. Civ. P. 23(a)(4) .......... 52, 54

Fed. R. Civ. P. 23(b)(3) .......... 55, 58, 59

Fed. R. Civ. P. 23(b)(3)(a) .......... 59

Fed. R. Civ. P. 23(b)(3)(d) .......... 60

Fed R. Civ. P. 54 ........................................................................................48

**Other Authorities**

7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778 (3d ed. 2005)........................................................................56

Michelle L. Nabors, *Relation Back of Amendments Adding Plaintiffs Under Rule 15(c)*, 66 Okla. L. Rev. 113, 114-120 (2013) ...........................22, 23

Restatement (Second) of Torts § 546, cmt. b ..........................................................39

## INTRODUCTION

This case concerns Yolo, a mobile application marketed primarily to teenagers to enable anonymous messaging. Yolo promised that bullies and harassers would be "revealed" and "banned" from the app. Yet YOLO failed to follow though on their promise, leaving vulnerable young users exposed to relentless abuse while their tormentors remained hidden.

The consequences of Yolo's misrepresentation were devastating. Sixteen-year-old Carson Bride endured months of anonymous cyberbullying before taking his own life. Despite Yolo's assurances, Carson's repeated efforts to identify his abusers proved fruitless. Other Plaintiffs-Appellants, also minors, received anonymous messages containing death threats, sexual harassment, and degrading insults. They, too, relied on Yolo's representations that abusive users would be identified and removed. These claims do not seek to impose liability merely because harmful content appeared on an online platform. As this Court recognized in the prior appeal, *Bride v. Yolo*, 112 F.4th 1168 (9th Cir. 2024), Plaintiffs-Appellants challenge Yolo's own promise to reveal and ban users, which they relied upon when choosing to use the application.

The district court's dismissal of the case compounds the injustice of a case already delayed by years of stayed discovery, a prior dismissal reversed by this Court, and Yolo's evasion of discovery and eventual abandonment of the litigation.

Plaintiffs-Appellants should not be denied a merits determination because the very information needed to establish their claims and identify responsible parties remained within Defendants-Appellees' control. Nor should Yolo's default become a tool for avoiding class claims. This Court should reverse and remand so Plaintiffs may pursue their claims and obtain the relief warranted by Yolo's conduct.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction under 28 U.S.C. § 1291 as an appeal from a final decision of the district court dismissing all claims with prejudice dated September 29, 2025, 1-ER-66, and May 11, 2026. 1-ER-2. Plaintiffs timely appealed on June 9, 2026. 3-ER-698; Fed. R. App. P. 4(a)(1)(A).

## FACTUAL BACKGROUND

### A. YOLO: A One-Sided, Anonymous Messaging App Propped up by Illusory Safety Promises

"YOLO" is an anonymous messaging application ("app") developed and operated by Defendant-Appellee, Yolo Technologies, Inc. (hereinafter Yolo).[1] *See* 2-ER-375 (Third Amended Complaint ("TAC") ¶ 1). Within a week of YOLO's launch in 2019, it became the top downloaded app in America and a "teen hit." The app attained 10 million daily active users within months. 2-ER-377 (TAC ¶ 3).

[1] Yolo (lowercase) refers to the company Yolo Technologies, Inc., while YOLO (uppercase) refers to the application.

Yolo developed an app that was an extension to the popular social media platform Snapchat—a defendant in the case who was dismissed via settlement and who made subsequent choices to remove all anonymous apps from its social media platform. *See* 2-ER-382, 395 (TAC ¶¶ 20, 51–52). Marketed mainly to teenagers, YOLO's defining feature is that it enables its users to send *anonymous* messages in response to a user's post. *See* 2-ER-382 (TAC ¶ 20). For instance, a user, Dave, installed YOLO and posted something from their Snapchat account. Another user, Eve, used YOLO, to respond to Dave's post anonymously. *See id*. The only way Dave could communicate with Eve would be to post her comment publicly and respond to it. *See id*. This exacerbated the humiliation and kept the drama constant. *Id*. In this scenario, all of Dave's Snapchat followers can see Dave's account name, his post, Eve's comment, and his reply—but not Eve's account name or identity. Unless Eve voluntarily revealed her own identity by "swiping up," no one would know of her identity. *See id.;* 2-ER-394 (TAC ¶¶ 20, 48). As a one-sided invisibility cloak, YOLO protects users who wish to withhold their identity while keeping the message recipient in the dark—a perfect tool for cyberbullying.

Yolo followed a long lineage of anonymous messaging apps linked to cyberbullying and teen suicide, and was well-aware of the dangers derived from anonymity features. *See* 2-ER-388-394 (TAC ¶¶ 32–48). Yolo voluntarily made bold promises to users that bullies would be "revealed" and "banned." There is no

evidence that Yolo ever made good on its promise, nor that it had the capacity to do so, given the app was being run by one employee. 2-ER-216-219.

Yolo made promises to reveal and ban inappropriate users ("reveal and ban" hereinafter). When a user first downloads the app, Yolo makes the following statement on its download page on the Apple or Google App Stores: "Be kind, respectful, show compassion with other users, otherwise you will be banned." 2-ER-397 (TAC ¶ 57).

When a user first opens YOLO on their device, a big pop-up notice fills the screen: "No bullying. If you send harassing messages to our users, your identity will be revealed." 2-ER-396 (TAC ¶ 56). These statements were directed to all users and potential users of YOLO. *Id*. Carson and all Plaintiffs-Appellants (hereinafter Plaintiffs) saw and relied upon these statements to their detriment. *See* 2-ER-396-397; 398; 404-407; 409 (TAC ¶¶ 55–57, 61, 80–93, 103).

Yolo failed to implement meaningful mechanisms to fulfill its promise to reveal and ban inappropriate users. *See* 2-ER-398-400 (TAC ¶¶ 59–62). Yolo likely never possessed the infrastructure to do so either: a sworn declaration submitted *by Yolo* stated that fewer than ten employees overseas, *see* 3-ER-589, were accountable for YOLO's 10 million daily active users as of 2021. *See* 2-ER-377 (TAC ¶ 3). Yet, discovery in May 2025 revealed that Yolo only consisted of *one* employee: Chief Executive Officer Gregoire Henrion. *See* 2-ER-216-217

("[P]roduce . . . all individuals who worked for Defendant (and its predecessor sand successors) from 2019 to date. . . . Response: Mr. Henrion was the sole employee of Defendant from January 1, 2029 to date."). Plaintiffs were unable to acquire this information through discovery until four years after first filing this lawsuit in May 2021, 2-ER-383 (TAC ¶ 21), in significant part because Plaintiffs appealed to the Ninth Circuit in order to overcome the district court's previous dismissal of Plaintiffs' claims based on Section 230 of the Communications Decency Act. *See Bride*, 112 F.4th 1168 (Ninth Circuit opinion remanding the instant case to the district court in August 2024). Per its own sworn declaration, Yolo knew or should have known that a single employee could not possibly provide meaningful safeguards to its millions of users. 2-ER-377 (TAC ¶ 3). Yolo repeatedly ignored reports of dangerous levels of harassing and bullying behavior on its app, as evidenced by Plaintiff Addison Kennedy's attempt to report her bullies through Yolo's Contact Us form, *see* 2-ER-409 (TAC ¶ 103), and numerous reviews left on the Apple Store complaining that Yolo failed to make good on their promise to ban or reveal the identities of their bullies. 2-ER-399-400. Meanwhile, news outlets like *USA Today* reported on Yolo's failure to reveal and remove bullies. *See, e.g.*, 2-ER-247-250; 2-ER-272 ("[T]here've been reports that . . . the support team has not been responding to flagged content.").

***Lead Plaintiff: The Estate of Carson Bride***

On June 23, 2020, the Bride family was struck by an unthinkable tragedy. *See* 2-ER-378 (TAC ¶ 8). Sixteen-year-old Carson Bride took his own life after suffering months of cyberbullying on YOLO. *Id.* The 105 messages Carson received included physical threats, obscene sexual messages and propositions, and other humiliating comments. *See* 2-ER-378, 402-404 (TAC ¶¶ 8, 70–74, 79). Despite Yolo's promise to reveal and ban users who send objectionable content, the company took no action. This forced Carson to engage in fruitless self-help efforts: he researched online how to identify his abusers, including on the night of his passing, *id*. (TAC ¶ 76); he asked the bullies to voluntarily swipe up and reveal their identity but they remained hidden, *id*.; and he asked other classmates about the bullies' identities, but they had no way of knowing. *See id*. (TAC ¶ 77).

Carson relied on Yolo's representations that Yolo would reveal the identities of abusive users and ban them when he signed up for and used the app. *See* 2-ER-398-402-404. This reliance caused him to experience deep frustration and distress during the process of searching for an alternative way to reveal the bullies on Yolo, persistently trying until the night of his death. *See id.*

Two weeks after Carson's death, his parents and Tom Bride contacted Yolo on the app's Contact Us form and Customer Support page, writing about the cyberbullying that led to Carson's death and asking for his bullies' identities to be

revealed. *See* 2-ER-404 (TAC ¶ 81). Despite Yolo's promise to users to ban and reveal the identities of harassing and bullying users, Yolo did not respond. *See 2*-ER-405 (TAC ¶ 83). Carson's parents then made two attempts to contact Yolo via the company's law enforcement email address. *See* ER-405-407 (TAC ¶¶ 84–86, 92–93). However, the Brides' emails bounced back because Yolo provided an "invalid address." *See id.* Through a professional contact, Carson's parents reached out to Yolo's chief executive officer, Henrion, but still received no response. *See 2*-ER-406-407 (TAC ¶¶ 90–91). Left with no other choice, on May 10, 2021, Carson's mother Kristin filed this lawsuit against Yolo and two other corporate defendants. 2-ER-379 (TAC ¶ 10).

***Plaintiffs Addison Kennedy, Amber Casperson, and A.O., and Third-Party Witness Maddie Freeman***

Addison Kennedy (hereinafter A.K.), Amber Casperson (hereinafter A.C.), and A.O. joined the lawsuit, and their claims were included in the First Amended Complaint. A.K. was a minor throughout the relevant times that she used YOLO in 2019, when she was persistently harassed with vicious anonymous messages. *See* 2-ER-381, 408-409 (TAC ¶¶ 17, 98–104). The anonymous users encouraged her to commit suicide ("I hope you die"), sent death threats ("I'm gonna kill you"), and made body shaming remarks (accusing her of shaving her head and "faking cancer" just "for attention"). 2-ER-408 (TAC ¶¶ 100–101). Relying on Yolo's statements that it would reveal harassers' identities, A.K. requested that Yolo

reveal her bullies' identities, but Yolo never responded. *See* 2-ER-409 (TAC ¶ 103).

A.C. was only 13 years old when she used YOLO and received harassing messages, all while grieving the death of her brother. *See 2*-ER-409-410 (TAC ¶¶ 105–108). The anonymous messages told her to "go kill yourself too" and included body-shaming comments. *Id.*(TAC ¶¶ 105–113). A.C.'s distress grew with each futile attempt to discover the identities of her bullies, who were protected by Yolo's inability to fulfil its promise to remove and ban bullies. *Id.*

A.O. is a minor who used YOLO and was harmed by harassing and bullying messages. *See* ER-381, 411-412 (TAC ¶¶ 18, 114–121). She received anonymous messages calling her offensive names like "whore" and remarks pertaining to sexual solicitation and body-shaming. *Id.* A.O. was unable to discover the identities of the senders of those messages. *Id.* As far as she is aware, the bully who sent her these messages was not removed, banned, or unmasked by Yolo. *Id.*

Plaintiffs A.K., A.C., and A.O. each relied on Yolo's promise to reveal the identities of abusive users and ban them when they signed up for and used the app. *See* 2-ER-398 (TAC ¶ 61). Yolo ignored their pleas for help, leaving vulnerable minors who trusted Yolo without recourse. *See* 2-ER-409-411 (TAC ¶¶ 103, 106, 115). Maddie Freeman, a YOLO user who is not a party in this case, submitted a declaration in support of Plaintiffs' class certification, stating that upon reading

these promises, general users like herself had expected those promises to be true, and would be "fully confident that YOLO would both reveal [bullies' identities] . . . and ban [such] user[s]." 2-ER-205

***Third Amended Complaint***

Plaintiffs brought this suit in their capacity as individuals and as a class representing individuals who used YOLO and were similarly harmed. *See* 2-ER-380 (TAC ¶¶ 14). In the TAC, Plaintiffs asserted (1) fraudulent misrepresentation; (2) negligent misrepresentation; (3) unjust enrichment; (4) violation of the Oregon Unlawful Trade Practices Act; (5) violation of the Colorado Consumer Protection Act; (6) violation of the Pennsylvania Unfair Trade Practices Law; and (7) violation of the Minnesota False Statement in Advertising Act. *See* 2-ER-380; 416-431 (TAC ¶¶ 13, 178–238). These claims address Yolo's misrepresentation to remove and ban users when it knew it could not, and did not fulfill the promise. 2-ER-396-397 (TAC ¶¶ 56-57).

***District Court's Decision***

First, the lower court erroneously granted Henrion's motion to dismiss by ruling that the Appellants'-Plaintiffs claims against him are barred by the statute of limitations. 1-ER-66. This lower court's decision is based on an outdated interpretation of the relation-back doctrine under Federal Rule of Civil Procedure l5(c). The district court focused on Plaintiffs' knowledge, a standard expressly

rejected by the Supreme Court in *Krupski v. Costa Crociere S. p. A.,* 560 U.S. 538 (2010).

Second, the lower court erroneously denied Plaintiffs' default judgment and class certification motion. The court found the misrepresentation claims were not adequately pleaded in the first place, essentially conducting ad hoc fact findings in the default-judgment stage and reaching conclusions without a factual record. 1-ER-2. The district court committed reversible legal error by substituting its own merits judgment rather than taking Plaintiffs' reasonable allegations as facts. Moreover, the lower court erred in denying Plaintiffs' class certification motion based on assumed facts surrounding superiority, predominance, and typicality and adequacy where Defendants defaulted without engaging in discovery regarding class certification. 1-ER-2.

## PROCEDURAL HISTORY

Plaintiffs filed their initial complaint May 10, 2021. 3-ER-671 (Dkt. No. 1). From September 27, 2021 to October 21, 2022, discovery was stayed while the Defendants' Motion to Dismiss was pending. *See* 3-ER-679-686 (Dkt. Nos. 79, 83, 130, 142). The district court dismissed the case on January 10, 2023, concluding Defendants were immune under Section 230 of the Communications Decency Act. *See* 3-ER-686. The Ninth Circuit reversed the district court's decision and remanded the case back to the district court on August 22, 2024, finding that Yolo "repeatedly informed users that it would unmask and ban [abusive and harassing] users," and that Plaintiffs "seek to enforce that promise . . . upon which they relied." *See Bride*, 112 F.4th at 1185. On October 24, 2024, Plaintiffs submitted the second amended complaint. 3-ER-497. Discovery only began in February 2025 after Defendants moved to dismiss the complaint which was denied for the most part. 3-ER-689 (Dkt. Nos. 170).

Plaintiffs sent a discovery request in February 2025 which asked Defendants to provide the records of all individuals who worked at Yolo. 3-ER-446. Defendants responded in March 2025, with mere objections but no material response. *Id*. In April 9, 2025, at Plaintiffs' initiative, magistrate judge Kaufman intervened in the discovery dispute. 3-ER-459-460. On May 23, 2025, Defendants shared objections and responses to Plaintiffs' amended request for discovery,

providing information pertaining to Henrion's role at Yolo and a limited range of IP addresses. *See* 3-ER-446. Soon after, Plaintiffs sent out a deposition notice to Henrion, which Defendants ignored. 3-ER-439. Plaintiffs then filed a motion to amend the complaint (June 10, 2025) to name the sole employee and CEO of the company—Gregoire Henrion—as a party to the suit. *See* 3-ER-437-440. Defendants then filed a motion to withdraw counsel and stay the case (June 10, 2025). 3-ER-691 (Dkt. No. 188 & 189). On July 1st, the lower court granted Defendant's motion to withdraw counsel and Plaintiffs' motion to amend. 3-ER-692 (Dkt. No. 198). Plaintiffs filed the Third Amended Complaint on July 3, 2025, 2-ER-375. On September 22, 2025, the district court entered default against Yolo for failure to retain counsel. *See* 3-ER-75. This default prematurely ended discovery that belatedly begun, denying Plaintiffs the opportunity to gather crucial information about Yolo's culpability. Then, on September 29, 2025, the district court dismissed claims against Henrion, leaving Yolo as the sole defendant, and stated it would dismiss the case if Plaintiffs did not move for default judgment. *See* 1-ER-66. On October 30, 2025, Plaintiffs did move for default judgment. *See* 3-ER-696 (Dkt. No. 237). On February 19 and April 16, 2026, Plaintiffs filed renewed motions for default judgment and class certification. *See* 2-ER-136; 169. The district court denied the motions for default judgment and class certification,

eventually dismissing Plaintiffs' claims against Yolo and closing the case on May 11, 2026. 1-ER-2.

## STATEMENT OF THE ISSUES

1. Whether the district court erroneously granted Gregoire Henrion's motion to dismiss the complaint by misinterpreting the relation-back doctrine under Federal Rule of Civil Procedure 15(c) and statute of limitations?
2. Whether the district court erroneously denied Plaintiffs' default judgment?
3. Whether the district court erred in denying Plaintiffs' class certification motion?

## STANDARD OF REVIEW

The standard of review over a district court's motion to dismiss complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure is reviewed de novo. *See Curtis v. Irwin Indus*., Inc., 913 F.3d 1146, 1151 (9th Cir. 2019). In reviewing the dismissal of a complaint, this Court accepts "all factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Rowe v. Educ. Credit Mgmt. Corp*., 559 F.3d 1028, 1029–30 (9th Cir. 2009) (internal quotation marks omitted).

## SUMMARY OF ARGUMENTS

The district court's rulings should be reversed. First, the district court misapplied Federal Rule of Civil Procedure 15(c)(1)(C) in dismissing claims against Henrion. Plaintiffs sought to add Henrion after discovery revealed that he

had been YOLO's sole employee and decisionmaker behind all its operations, contrary to its declarations in the beginning of the case. The court improperly focused on Plaintiffs' knowledge rather than Henrion's understanding of the mistake, and failed to take into consideration the prolonged discovery stay and Yolo's knowing concealment of facts. The claims should relate back, and Henrion should be estopped from asserting a limitations defense.

Second, the district court improperly denied default judgment. YOLO's default entitled Plaintiffs' well-pleaded allegations to a presumption of truth, yet the court rejected those allegations, relied on unsupported factual inferences, and raised defenses YOLO never asserted. Despite Plaintiffs' declarations and itemized damages calculations, the court denied relief without a meaningful opportunity to find a mechanism to prove up damages.

Third, the district court erred in denying class certification. Plaintiffs challenge YOLO's uniform misrepresentations that abusive users would be revealed or banned which every user was exposed to. Whether those representations were false or misleading presents common questions capable of resolution through common proof. The court improperly treated individualized issues of bullying, reliance, and harm as defeating certification. Differences in damages do not preclude class treatment, and a class action is still the superior

means of adjudicating these claims. This Court should vacate the lower court's decisions and remand for further proceedings.

## ARGUMENT

### I. The Lower Court Erroneously Granted Henrion's Motion to Dismiss.

Plaintiffs respectfully request the Court to reverse the lower court's decision to dismiss Henrion as a party to the suit. The lower court should not have granted Henrion's Motion to Dismiss because Plaintiffs satisfy the requirements of Federal Rule of Civil Procedure 15(c) and equitable estoppel and tolling weighs in favor of a merits adjudication of this case.

#### A. Plaintiffs' Claims Against Henrion Should Be Related Back To the Original Complaint

Plaintiffs first sought to implead Henrion in the TAC after obtaining evidence through discovery that contradicted previous disclosure and revealed Henrion's individual liability. On July 11, 2021, Yolo originally stated that he "was the only employee in Los Angeles and all eight (8) other company personnel [we]re located in Paris, France." 3-ER-589. Yet, four years later, on May 23, 2025, Yolo responded in discovery that Henrion was its sole employee at all times of Yolo's existence. *See* 2-ER-216-217 ("produce . . . all individuals who worked for Defendant (and its predecessor sand successors) from 2019 to date" . . . Response: "Mr. Henrion was the sole employee of Defendant from January 1, 2019 to date). Within three weeks of Yolo's response to discovery (May 23, 2025) where it

revealed Henrion's sole responsibility over YOLO's business operations, Plaintiffs filed a motion to amend the complaint (June 10, 2025) to name Henrion as a Defendant. 3-ER-436. As alleged in the TAC, as the sole employee throughout Yolo's existence, Plaintiffs allege that Henrion himself directed and/or participated in YOLO's day to day decisions including its statements to users and the decisions not to spend resources on following through its "reveal and ban" promise. 2-ER-383 (TAC ¶ 21); *See*, *e.g.*, *Frances T. v. Village Green Owners Assoc.*, 42 Cal. 3d 490, 504 (1986) ("Directors are jointly liable with the corporation and may be joined as defendants if they personally directed or participated in the tortious conduct. . . . [r]egardless of whether they acted on behalf of the corporation and regardless of whether the corporation is also liable.").

In granting the motion to amend, the district court found that Plaintiffs' amendment was neither futile nor prejudicial against Henrion. *See* 1-ER-87 ("[T]he *Foman* factors weigh in favor of granting leave to amend, especially considering that courts apply the Ninth Circuit's policy favoring amendment with 'extreme liberality,' and '[a]bsent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend.'") (quoting *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)). Then, just three months later, the district court dismissed the

claims against Henrion, reasoning that they could not relate back to the claims against Yolo. *See* 1-ER-66.

### 1. Plaintiffs satisfy the notice and mistake requirements of FRCP 15(c)(1)(C).

The Plaintiffs seek to implead Henrion by relating their claims against him back to their claims against Yolo. To relate back, Rule 15 requires that the defendant "(i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C). Here, Plaintiffs satisfy both elements of the rule. First, the district court found notice to be satisfied. Indeed, there is no dispute with respect to this element. *See* 1-ER-70-71 (finding that Henrion had notice of Plaintiffs' claims during the period required by Rule 15); *see also* ECF 198, at 10 ("Defendant does not argue that there is any prejudice" in naming Henrion because of his involvement in this suit from its inception). Second, Henrion—possessing and withholding information about the corporate structure of Yolo from Plaintiffs—should have known that he would have been named but for Plaintiffs' mistake. The district court improperly dismissed Henrion, applying standards that contradict the Supreme Court's ruling in *Krupski*, which established the applicable relation back doctrine. 560 U.S. 538 (2010).

### 2. Plaintiffs Satisfy FRCP 15(c)(1)(C)(ii)'s Knowledge Standard.

The Supreme Court in *Krupski* held that relation back "depends on what the party to be added knew or should have known, *not* on the amending party's knowledge." 560 U.S. at 541 (emphasis added). Here, Henrion knew or should have known that he would be named because, in the initial complaint, and in every subsequent complaint, Plaintiffs alleged claims against Does #1–10, each of whom is the "principal, director, officer, manager, [or] employee . . . of [Yolo]." 3-ER-602 (Compl. ¶ 42); 3-ER-506 (SAC ¶ 22); 3-ER-384 (TAC ¶ 22). Given that each of these terms describes Henrion, and he exercised exclusive control over Yolo, Henrion should have known he would be named in the suit. *See In re LLS Am. LLC*, 701 Fed. App'x. 565, 568 (9th Cir. 2017) (relating back plaintiffs' claim because defendant "controlled" the indebted company); *see also Navarra v. Marlborough Gallery, Inc.*, No. 10 Cv. 7547, 2013 WL 1234937, at *5 (S.D.N.Y. Mar. 25, 2013) (finding that senior employees knew or should have known that they would be named in a suit against the defendant company by virtue of their role).

Yet, in its decision, the district court erred in its relation back analysis by evaluating Plaintiffs' knowledge instead of Defendant's knowledge. *See Krupski*, 560 U.S. at 541. Here, the district court concluded that *Plaintiffs'* knowledge of Henrion's existence precluded relation back of their misrepresentation claims, 1-

ER-71, erroneously focusing on Plaintiffs' knowledge in contradiction with the standard established in *Krupski*. 560 U.S. at 539 ("[I]t would be error to conflate knowledge of a party's existence with the absence of mistake."). The only time a plaintiff's knowledge is relevant is when that information "bears on the defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity." *Id.* at 548. Had the district court correctly conducted this inquiry, it would have found that Defendant Henrion knew or should have known that Plaintiffs would name him in this suit and permitted Plaintiffs' relation back.

**3. Plaintiffs' Misidentification Falls Squarely Within Rule 15(c)(1)(C)(ii).**

In *Krupski*, the Supreme Court found that relation back is permitted in cases where the nature of the mistake was grounded in a plaintiff's misunderstanding of one party's *status or role* in relation to another's. 560 U.S. at 549 ("[A] plaintiff might know that the prospective defendant exists but nonetheless harbor a misunderstanding about his status or role . . . . That kind of deliberate but mistaken choice does not foreclose a finding that Rule 15(c)(1)(C)(ii) has been satisfied."); *Myers v. Checksmart Fin. LLC*, 701 Fed. App'x. 588, 589 (9th Cir. 2017) (finding that relation back should have been granted because the plaintiff "did not understand [the defendant's] role") (citation omitted). Before *Krupski*, courts narrowly construed the Rule 15 mistake requirement to mean mistake as to identity. However, the Supreme Court in *Krupski* broadened the scope of the

requirement to now include status and role. *See Krupski*, 560 U.S. at 549. In the instant case, the lower court repeatedly relied upon pre-*Krupski* case law, applying outdated doctrine. *See* 1-ER-71.

Here, the fact that Henrion was Yolo's sole employee and the person behind its day-to-day operations and decisions was not revealed to Plaintiffs until four years after the initial complaint was filed. *Contrast* 3-ER-589 (Henrion declaring Yolo had teams in U.S. and Paris including Henrion and 8 other personnel) *with* 2-ER-217 (stating Henrion was Yolo's sole employee at all relevant times). Based on Henrion's declaration, filed in 2021, Plaintiffs had no reason to know that Yolo's responsibilities and decisions regarding the claims alleged were made by one person (CEO and sole employee) and Defendant withheld this fact until the statute of limitations had expired. *See Brink v. First Credit Res.*, 57 F. Supp. 2d 848, 855–58 (D. Ariz. 1999) (finding that the "mistake" requirement in Rule 15(c) may be satisfied when plaintiff "learns the identity of the new defendant only after the statute of limitations has expired *because* the named defendant failed to provide the information sooner") (emphasis added); *G.F. Co. v. Pan Ocean Shipping Co.*, 23 F.3d 1498, 1503 (9th Cir. 1994) (permitting relation back where plaintiff did not become aware that an individual may be a potential defendant until after the statute of limitations had expired because of ambiguity introduced by the named defendant). Because Defendant created ambiguity as to Henrion's role at Yolo, the

Court should permit relation back. To decide otherwise would permit Defendants to eliminate claims against Henrion "merely by resisting discovery requests until the statute of limitations has ended." *Byrd v. Abate*, 964 F. Supp. 140, 146 (S.D.N.Y. 1997).

Furthermore, Plaintiffs' knowledge of Henrion's existence at the time of filing does not preclude a finding of mistake. As the Supreme Court explained in *Krupski*:

> That a plaintiff knows of a party's existence does not preclude her from making a mistake with respect to that party's identity. A plaintiff may know that a prospective defendant—call him party A—exists, while erroneously believing him to have the status of party B. Similarly, a plaintiff may know generally what party A does while misunderstanding the roles that party A and party B played in the "conduct, transaction, or occurrence" giving rise to her claim. If the plaintiff sues party B instead of party A under these circumstances, she has made a "mistake concerning the proper party's identity" notwithstanding her knowledge of the existence of both parties.

560 U.S. at 549.

In coming to the conclusion that Plaintiffs' knowledge did preclude a finding of mistake, the lower court erred by relying on outdated, overturned cases. For instance, the lower court cites *In re ATM Fee Antitrust Litig.*, 768 Fed. Supp. 2d 984 (N.D. Cal. 2009), and *Louisiana-Pac. Corp. v. ASARCO, Inc.*, 5 F.3d 431 (9th Cir. 1993); however, both were overturned by *Krupski*. 1-ER-7; *see Krupski*, 560 U.S. at 549. While these cases previously adhered to the standard that relation back is precluded if plaintiff learns of the defendant within the limitations period,

*Krupski* explicitly rejected this rule, holding that such knowledge would not "foreclose a finding that Rule 15(c)(1)(C)(ii) has been satisfied." 560 U.S. at 549.

The lower court additionally relied on *Nelson v. Adams USA, Inc.* when determining that relation back should be denied, concluding that the facts of *Bride* paralleled those in *Nelson* and thus necessitated a similar finding that relation back should not be permitted. ECF 231, at 7. There, however, respondent "knew of Nelson's role [as sole shareholder] and existence." *Krupski*, 560 U.S. at 551–552. Here, due to Defendant's deceit, Plaintiffs did not know that Henrion was the sole employee of Yolo until *after* the statute of limitations elapsed. *See* 2-ER-217.

Plaintiffs' request to implead Henrion not only satisfies the Rule 15 requirements of relation back but falls squarely within the goal of relation back: to decide "claims on their merits without prejudicing the defendants." *Leonard v. Gen. Motors L.L.C.*, 504 F. Supp. 3d 73, 92 (D. Conn. 2020) (citing *Doe v. Whelan*, No. 3:08–cv–846, 2010 WL 5093102, at *2 n.3 (D. Conn. Dec. 8, 2010)); *see Korn v. Royal Caribbean Cruise Line, Inc.*, 724 F.2d 1397, 1401 (9th Cir. 1984) (permitting relation back because the "Court would not allow the defendants to use Rule 15(c) as a "log to hide behind"); *see also* Michelle L. Nabors, *Relation Back of Amendments Adding Plaintiffs Under Rule 15(c)*, 66 Okla. L. Rev. 113, 114–120 (2013) (explaining that relation back "requires that parties have wide latitude to correct and clarify pleadings," and would otherwise allow a "crucial

point" to be "arbitrarily barred by a limitations defense"). Here, denying relation back would impose the very concerns the Supreme Court cautioned against in *Kruspki*, namely that to deny relation "would be a windfall for a prospective defendant who understood, or who should have understood, that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity." 560 U.S. at 550.

While the relation back doctrine seeks to balance the goal of deciding a case on the merits with protections afforded by the statute of limitations, "the requirement that the defendant had notice of the conduct, transaction, or occurrence underlying the claim is also sufficient to ensure that the policies behind the statute of limitations are satisfied." Nabors, *Relation Back of Amendments Adding Plaintiffs Under Rule 15(c)*, 66 Okla. L. Rev. at 114–122. Indeed, the policy of the statute of limitations is not offended when a party has notice of a suit, and to deny relation back in such instances would "defeat unjustly the claimant's opportunity to prove his case." Fed. R. Civ. P. 15(c) advisory committee's note to 1966 amendment.

Plaintiffs have satisfied the pertinent notice requirements and impleading Henrion at this stage would not impose due process concerns on him. Excluding Henrion from the suit, when all parties agree that he received timely notice and

would not suffer prejudice if named, would oppose the goals of the relation back doctrine and improperly limit Plaintiffs' pursuit of justice.

### B. The Statute of Limitations Should Be Equitably Tolled Because Discovery Was Stayed for Nearly Three Years After this Litigation Commenced.

Plaintiffs also request the statute of limitations be tolled due to the procedural timeline of this suit. From October 13, 2021, months after this litigation began, to January 10, 2023, discovery was repeatedly stayed based on parties' joint agreements while Defendants' motion to dismiss was pending, and while parties actively engaged in settlement discussions. *See* 3-ER-679-786 (Dkt. Nos. 79, 83, 87, 89, 92, 95, 97, 99, 104, 107, 114, 125, 130, 142). Then, on January 10, 2023, the lower court dismissed the instant case on Section 230 grounds. 1-ER-121. Plaintiffs appealed to the Ninth Circuit, which reversed the lower court's dismissal and *remanded* the case on August 22, 2024. Per Defendants, the statute of limitations expired on May 10, 2024, but Defendants only revealed that Henrion was the "sole employee" months later, on May 23, 2025. 1-ER-79; 3-ER-446. The timeline of this case prevented Plaintiffs from engaging in any discovery until more than three years after the inception of this suit. Had discovery begun and progressed in a timely manner, Plaintiffs would have acquired the information needed to name Henrion as a Defendant before the statute of limitations elapsed. The parties had stipulated to staying discovery pending a dispositive motion based

on Section 230; the lower court's order to stay discovery followed; and discovery was closed during the first appeal of this case to the Ninth Circuit. Therefore, Plaintiffs respectfully request that the Court toll the statute of limitations to account for the lack of discovery during nearly three years of this case.

Equitable tolling suspends the statute of limitations when a plaintiff suffers an excusable delay in discovering or filing a claim. *See Lukovosky v. City & Cnty. of S.F.*, 535 F.3d 1044 (9th Cir. 2008). The doctrine is read "into every federal statute of limitations." *See Milby v. Templeton (In re Milby)*, 875 F.3d 1229, 1232 (9th Cir. 2017) (citing *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946)). Under California law, a plaintiff seeking to invoke equitable tolling must satisfy three elements: (i) timely notice, (ii) lack of prejudice to the defendant, and (iii) reasonable and good faith conduct on the part of the plaintiff. *Addison v. State*, 21 Cal. 3d 313, 319 (1978). Plaintiffs satisfy each of these requirements.

First, Plaintiffs provided Henrion with ample notice of the suit against Yolo. As CEO and sole employee of the company, Henrion knew or should have known that he would be named in this suit. *See In re LLS Am. LLC*, 701 Fed. App'x. at 568 (9th Cir. 2017) (finding that the owner of a company knew or should have known he would be named in a suit against it); *Navarra*, 2013 WL 1234937, at *5 (finding that two senior employees knew or should have known that they would be named in a suit against the defendant company). Furthermore, that Plaintiffs named

the "principal, director, office, manager, [or] employee . . . of [Yolo]" as Does #1-10 at the outset of litigation provided Henrion with sufficient and timely notice. 3-ER-602 (Compl. ¶42). *See Saint Francis Mem'l Hosp. v. State Dep't of Pub. Health*, 9 Cal. 5th 710, 714 (2020) (holding that timely notice requires the plaintiffs' "actions caused the defendant to be fully notified within the statute of limitations of plaintiffs' claims and their intent to litigate"). The district court also concluded Henrion was provided notice. *See* 1-ER-70-71.

Second, equitable tolling in this case does not result in prejudice to Henrion because Plaintiffs did not file additional or unique claims against Henrion in their TAC. In fact, Plaintiffs allege that Henrion is liable for the very same claims that were alleged against Yolo. *See* 2-ER-421-429 (TAC ¶¶ 197–231); 3-ER-437. California courts have repeatedly recognized a lack of prejudice when "the facts of the two claims [are] identical or at least similar [such] that the defendant's investigation of the first claim will put him in a position to fairly defend the second." *Brome v. California Highway Patrol*, 44 Cal. App. 5th 786, 796 (2020); *Hopkins v. Kedzierski*, 225 Cal. App. 4th 736, 747 (2014) (same); *Downs v. Dep't of Water & Power*, 58 Cal. App. 4th 1093, 1096 (1997) (same). Here, the lower court twice concluded that Plaintiffs' amendment to name Henrion does not prejudice him, and neither side argues that prejudice is present here. *See* 1-ER-86 ("Defendant does not argue that there is any prejudice" in Plaintiffs' naming

Henrion after the statutes of limitations elapsed); 1-ER-70-71 (finding that Henrion had adequate notice of Plaintiffs' suit, such that Henrion would not be prejudiced in maintaining a defense).

Lastly, Plaintiffs' delay in pursuing discovery and uncovering the relevant information required to name Henrion as a Defendant is largely attributable to the procedural flow of this case, as discussed above, and Henrion concealing the extent of his personal liability for Yolo's actions. *See infra* II.A. Equitable tolling applies to a statute of limitations when a plaintiff's conduct is "objectively reasonable and subjectively in good faith." *See Saint Francis Mem'l Hosp.*, 9 Cal. 5th at 729.

Here, Plaintiffs did not stall or miss discovery-related deadlines. Rather, parties had agreed in good faith to stay discovery while a dispositive motion based on Section 230 was pending and while engaging in settlement discussion. During this period, Plaintiffs relied in good faith on Henrion's declaration, which falsely described the number of employees at Yolo and hid Henrion's personal culpability as the sole decision maker and employee of Yolo. *See* 3-ER-589. It was only after the Ninth Circuit allowed Plaintiffs' misrepresentation claims to proceed, *Bride*, 112 F.4th 1168, that Plaintiffs were able to pursue discovery and uncover the true nature of Henrion's role. Plaintiffs fought tooth and nail to receive bare minimum responses from Yolo, *see* 3-ER-439 (stating background and intent to file motion to compel due to discovery delay and Henrion's nonresponse to deposition notice);

3-ER-460, and moved to add Henrion to this suit immediately after learning of the potential for his personal liability. Accordingly, Plaintiffs request that the Court equitably toll the statute of limitations here such that Plaintiffs may resolve this case on its merits.

### C. Defendants Should be Estopped from Raising a Statute of Limitations Defense Because They Actively Withheld Crucial Information Pertaining to Henrion's Personal Liability.

Henrion should be equitably estopped from raising a statute of limitations defense because he withheld information that, if known, would have led Plaintiffs to implead him in a timely manner. The doctrine of equitable estoppel may be applied when a defendant's actions prevent a plaintiff from filing suit before the statute of limitations elapses. *See State Comp. Ins. Fund v. Workers' Comp. Appeals Bd.*, 40 Cal. 3d 5, 16 (Cal. 1985) ("The essence of an estoppel is that the party to be estopped has by false language or conduct led another to do that which he would not otherwise have done and as a result thereof that he has suffered injury.") (internal quotation marks omitted).

Here, Plaintiffs should be granted leave to name Henrion in the suit because Yolo incorrectly described the extent to which Henrion controlled Yolo's operations in their own declarations. *Contrast* 3-ER-589 (declaring that Yolo employed Henrion and eight others) *with* 2-ER-217 (stating that Henrion is Yolo's sole employee). Defendant potentially hid other evidence of Henrion's personal

liability by delaying and withholding information in response to Plaintiffs' request for production. 3-ER-446. Had Yolo been transparent from the beginning regarding Henrion's role as the sole employee that made decisions on the day-to-day operations of Yolo, Plaintiffs would have impleaded him within the statute of limitations.

For the Court to estop a defendant from raising a statute of limitations defense, California law requires that four requirements be met: (i) the party to be estopped must be apprised of the facts; (ii) that party must intend that his or her conduct be acted on, or must so act that the party asserting the estoppel had a right to believe it was so intended; (iii) the party asserting the estoppel must be ignorant of the true state of facts; and (iv) the party asserting the estoppel must reasonably rely on the conduct to his or her injury. *Rustico v. Intuitive Surgical, Inc.*, 993 F.3d 1085, 1096 (9th Cir. 2021); *Lukovsky v. City & Cnt'y of San Francisco*, 535 F.3d 1044, 1051–1052 (9th Cir. 2008).

Here, Plaintiffs have shown that these requirements are met. Henrion knew the true extent of his control over Yolo and intended Plaintiffs to act on his misrepresentation. First, Henrion concealed that he was the sole employee and decision maker behind Yolo's operations. *See* ECF 31-3 (representing that Henrion was one of several employees). Then, he raised a Section 230 defense, which was ultimately rejected by the Ninth Circuit. *See Bride*, 112 F.4th 1168. After remand,

Yolo lodged wholesale objections and refused to respond to Plaintiffs' discovery requests despite several meet and confers, such that Plaintiffs sought the Magistrate Judge's intervention. 3-ER-460; 3-ER-446; 3-ER-439. Shortly thereafter, Yolo defaulted by its attorneys withdrawing and prevented Plaintiff from gaining any discovery that might implicate Henrion's personal liability. 1-ER-77; 1-ER-75. If Yolo had transparently disclosed that Henrion was the sole decisionmaker and employee of Yolo's operations rather than obfuscate the truth by false declarations and delay tactics, Plaintiffs would have named him individually sooner. These collective facts show that Henrion should be estopped from raising a statute of limitations defense.

Affirming the district court's decision would set a dangerous precedent that encourages other CEOs to follow the method Henrion crafted to evade liability. At every step of this litigation, Henrion has attempted to run from liability with misrepresentations and delay. These actions demonstrate an intention to prevent further discovery that may reveal facts personally implicating Henrion. Taken together, Henrion's conduct authors a playbook that instructs CEOs how to evade liability and limit discovery until claims against them are time barred. Future defendants would rest assured that false declarations and delay tactics would help evade liability, and that they can manipulate the circumstances of a proceeding. Therefore, Plaintiffs request that the Court equitably estop Henrion from raising a

statute of limitations defense to prevent him and future CEOs from escaping liability through this strategy.

## II. <u>The Lower Court Erroneously Denied Plaintiffs' Motion For Default Judgment</u>

Plaintiffs request that the Court vacate the lower court's denial of Plaintiffs' Motion for Default Judgment. In its dismissal, the district court impermissibly engages in fact finding, raises arguments *sua sponte* and on behalf of Defendant, relies on inapplicable precedent, and reaches conclusions that contradict the Ninth Circuit's prior ruling on the instant case.

In its order denying Plaintiffs' Motion for Default Judgment, 1-ER-2, the district court applied the second, third, and fourth *Eitel* factors. *See* 1-ER-2; *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986) (advising courts to consider the following factors when determining whether to enter default judgment: (i) prejudice; (ii) merits of the claim; (iii) sufficiency of the complaint; (iv) sum of money at stake; (v) possibility of dispute concerning material facts; (vi) whether default was due to excusable neglect; and (vii) policy of favoring decisions on the merits).

The district court erred in assessing the merits of the claim (*Eitel* factor 2). Upon a defendant's default, plaintiffs' well-pleaded facts, excluding damages, are taken as true. *See, e.g.*, *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987); *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). The facts pleaded in the TAC satisfy the elements of Plaintiffs' misrepresentation

claims. *See* 2-ER-377, 417 (TAC ¶¶ 5, 182, 183) (misrepresentation of a fact); 2-ER-383, 417 (TAC ¶¶ 21, 184) (knowledge of falsity); 2-ER-383, 418 (TAC ¶¶ 21, 185) (intent to induce reliance); 2-ER-396–399, 404, 409, 419 (TAC ¶¶ 55–57, 61, 62, 80, 103, 189) (justifiable reliance); 2-ER-420 (TAC ¶¶ 190–194) (damages). As a finder of law, not fact, the district court lacked the discretion to reject these well-pleaded facts. Had it accepted these facts as true, the district court would have been constrained to find for Plaintiffs. Plaintiffs request that this Court reverse the district court's decision by assessing the merits of Plaintiffs' misrepresentation claims, outlined below.

### A. Yolo's Statements to Reveal and Remove Bullies Were Actionable Misrepresentations.

Yolo represented that it "had no tolerance for objectionable content or abusive users" and users who engaged in such inappropriate conduct would be "banned." 2-ER-396, 397 (TAC ¶ 55, 57); 1-ER-3. These statements were very clearly conveyed on Yolo's App Store page and in pop-up notices displayed to all users opening the app. *Id*. Yolo further promised that any user who sends "harassing messages to [other] users" would have their "identity . . . revealed." 2-ER-396 (TAC ¶ 56); 1-ER-3. The district court determined that these statements were not actionable misrepresentations because: (i) they are "too vague to be enforced" and thus not misrepresentations of fact, 1-ER-29; (ii) Defendants did not intend for Plaintiffs to rely on these statements, *see* 1-ER-30; and (iii) Plaintiffs'

reliance on these statements was unreasonable. *See* 1-ER-30–33. The district court reached an incorrect conclusion on each of these points. Defendant's promises are misrepresentations of fact because Yolo genuinely lacked the ability to reveal and ban bullies. Yolo intended to induce reliance because it made representations it knew to be false, and Plaintiffs' well-pleaded claims of justifiable reliance are sufficient to establish that such reliance was reasonable at default judgment.

The district court's opinion is misaligned with this Court's reading of Plaintiffs' misrepresentation claims. *See Bride*, 112 F.4th at 1178. In the prior appeal of this case, this Court correctly reversed the district court's dismissal of this case, noting that Plaintiffs' misrepresentation claims based on the "reveal and ban" policy would not be immunized under Section 230. *Id*. This Court correctly noted:

> Plaintiffs seek to hold YOLO accountable for a promise or representation, and not for failure to take certain moderation actions. Specifically, Plaintiffs allege that YOLO represented to anyone who downloaded its app that it would not tolerate "objectionable content or abusive users" and would reveal the identities of anyone violating these terms. They further allege that all Plaintiffs relied on this statement when they elected to use YOLO's app, but that YOLO never took any action, even when directly requested to by A.K. In fact, considering YOLO's staff size compared to its user body, it is doubtful that YOLO ever intended to act on its own representation. *Id.*

This Court also noted that once remanded, Defendant may be able to raise defenses, such as enforceability of their promise or lack of reliance, but did not rule on the fact-specific issues necessary to support these defenses. *Id*. at 1179

("[I]t is certainly an open question whether YOLO has any defenses to enforcement of its promise, . . . [such as] that it did not intend to induce reliance on the promise by the Plaintiffs, or that the statements were not promises made to Plaintiffs but instead warnings to others."). However, Defendant failed to raise any of these defenses.

The only defense that Yolo raised was in its Motion for Judgment on the Pleadings arguing that the misrepresentation claims were barred because the statements at issue were part of the Terms of Service, which was disaffirmed by the Plaintiffs. *See* 1-ER-95, 96. In denying the Motion for Judgment on the Pleadings, the lower court correctly ruled that the misrepresentation claims alleged here were not barred, as they were found in statements other than the Terms of Service, such as "pop-up message that fills the first screen of Yolo's app" and "Yolo's App Store Page." *Id*. Importantly, the district court ruled that Yolo's defenses are "fact-intensive and better addressed on a developed record." *Id*. at 8.

Yet, Yolo did not engage in discovery until the magistrate judge intervened, and soon after, Yolo's attorneys filed a motion to withdraw and stay the case which prevented any factual record development. *See* 3-ER-690–691 (Motion re: Information Discovery Dispute and Discovery Conference; Motion to Withdraw and Motion to Stay Case).

Therefore, until Yolo went into default, Plaintiffs was deprived of the opportunity to develop an evidentiary record, and the only discovery response Yolo provided were objections to Plaintiffs' Request for Production and the information that Henrion was the sole employee at Yolo since its beginning to demise. 2-ER-217; 3-ER-446. Absent any factual record or defenses raised by Defendants, the district court should have accepted Plaintiffs' factual allegations. Instead, in its order denying Plaintiffs' Motion for Default Judgment, the district court made rogue factual findings without any basis in the record and recharacterized Yolo's statements as nonactionable promises conditioned on Yolo's subjective determination of bullying. *See* 1-ER-29. The district court holding should therefore be vacated.

**1. Yolo's Statements Misrepresented the Fact That It Had No Ability Whatsoever to Reveal and Remove Bullies**

The district court erroneously found that Yolo's statements that bullies' identities would be revealed and banned were "not susceptible of being true or false." *See* 1-ER-28. However, this finding contradicts *Bogard v. TikTok Inc.*, a case with similar facts cited by the district court in its dismissal of Plaintiffs' Motion for Default Judgment. No. 24-cv-03131, 2025 WL 3637035, at *8–9 (N.D. Cal. 2025) (promising to "review and remove" dangerous content and check "every report that is sent to TikTok"). The district court compares Yolo's statements to TikTok's and concludes that, because TikTok's statements were not

actionable, neither are Yolo's. *See* 1-ER-24–27. However, the *Bogard* court actually decided that the statements *are* actionable misrepresentations. In particular, the court in *Bogard* decided that the "review and remove" statements made by social media platforms "are not merely promises about future conduct, or qualified representations that removal depends on Defendants' subjective determinations, but rather (allegedly false) statements of fact about how Defendants actually handle reported content, and that these statements are susceptible of being true or false." 2025 WL 3637035, at *9. Importantly, the *Bogard* ruling cites to this Court's prior ruling in this case as binding authority, noting that this case "address similar representation by service provider that it would unmask and ban abusive users." *Id*. at 15.

Yolo's statements are sufficiently concrete and capable of being proved false. In general, a misrepresentation must be a "specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." *Coastal Abstract Serv. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999). No matter how egregious the bullying, Yolo, as a one-person company, could not reveal and remove users who harass others. *See* 2-ER-217. This case is a striking example: even Carson's parents' pleas for uncovering the reasons being Caron's death through various outreach to Yolo could not trigger Yolo to identify his bullies or remove them from the app. *See* 2-ER-404–407 (TAC

¶¶ 81–97). Further, Yolo's claims are measurable. They can be quantified by records of how and when the reveal and ban was ever enforced, such as the number of users who were actually revealed or banned, and resources dedicated to carrying out the promise. Plaintiffs demanded such information but Defendant did not respond in discovery. *See* 2-ER-216 (requesting documents regarding "Defendant's review, response, or investigation" of "instances of harassment or bullying"); 2-ER-218 (requesting "[r]ecords related to the enforcement of YOLO's advertised reveal and ban feature," to which Yolo responded by only attaching a copy of Yolo's public Terms of Service). On the current record, Yolo never had the means nor ability to enforce its promise. None of the other Plaintiffs were able to reveal their bullies despite that A.K. reported the bully to Yolo and attempted to reveal their identities, *see* 2-ER-409–411 (TAC ¶¶ 103, 110, 120), countless complaints of customers cited in the Complaint show that the reveal and ban did not work, *see* 2-ER-399, and Yolo was a one-person company, *see* 2-ER-217. Hence, this Court must conclude that Yolo's statements regarding its ability to reveal and remove bullies was objectively false.

In addition, California law suggests that if a defendant makes a promise that he or she has no intention of performing, that promise is an actionable misrepresentation. *See Lazar v. Superior Ct.*, 12 Cal. 4th 631, 638 (Cal. 1996); *see also Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 158 (Ct.

App. 1991) ("Certain broken promises of future conduct may, however, be actionable."). Relatedly, even puffery or vague statements can be actionable as misrepresentation when a speaker knows facts that make his statements false. *See In re Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*, 753 F. Supp. 3d 849, 890 (N.D. Cal 2024) (finding that puffery can be actionable when the defendant knows facts that make the statement in question deceitful). Here, Yolo, a one-person company, knew it was impossible for it to remove and reveal even a fraction of the users responsible for the most virulent bullying on its platform. *Compare* 2-ER-217 (stating that Yolo has one employee throughout its existence) *with* 2-ER-376 (TAC ¶ 3) (stating that Yolo had 10 million active users). Indeed, this Court in the prior appeal decision found that, "considering Yolo's staff size compared to its user body, it is doubtful that Yolo ever intended to act on its own representation." *Bride*, 112 F.4th at 1178. Because Yolo almost certainly knew it could not reveal and remove bullies while making that exact promise to its users, its statements are tortious misrepresentations.

**2. Yolo Intended for Plaintiffs to Rely on its Promises, and Such Reliance Was Justifiable**

In its previous ruling, this Court noted that Plaintiffs allegedly relied on Yolo's statements. *See Bride,* 112 F.4th at 1178–1179 (describing Plaintiffs as seeking to enforce a promise "made multiple times to them and upon which they relied"). Indeed, the TAC is replete with factual allegations of actual, material, and

justifiable reliance described in detail below. *See* 2-ER-396–398, 404–407, 409 (TAC ¶¶ 55–57; 61; 80–93; 103); *see also* 2-ER-203–210 (detailing reliance by third-party user Maddie Freeman). Defendant did not offer up a single piece of evidence to the contrary. Yet the district court found that Plaintiffs did not justifiably rely on Yolo's promise without any basis in the record. *See* 1-ER-30.

Actual reliance on a misrepresentation occurs when that misrepresentation substantially influences a plaintiff's decision to act. *See Whiteley v. Philip* Morris Inc., 117 Cal. App. 4th 635, 678 (2004). The misrepresentation need not be the "sole or even the predominant or decisive factor in influencing [the plaintiff's] conduct. . . . It is enough that the representation has played a substantial part . . . in influencing [the plaintiff's] decisions." *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 976–97 (1997) (quoting Restatement (Second) of Torts § 546, cmt. b). To plausibly plead actual reliance, a plaintiff must allege he or she was "exposed to a false or misleading representation." *Gonzales v. Nat. Factors Nutritional Prods. Inc.*, No. 2:24-CV-02584, 2024 WL 4609853, at *6 (C.D. Cal. June 28, 2024). Finally, a presumption of actual reliance arises "wherever there is a showing that a misrepresentation was material" and "materiality is generally a question of fact." *Engalla*, 15 Cal. 4th at 977 (concluding that plaintiffs need only plead materiality to establish actual reliance at summary judgment).

Applied here, Plaintiffs have pleaded actual reliance. In the TAC, Plaintiffs and other Yolo users allege that they read and relied on Yolo's promise to reveal and remove users for inappropriate usage. *See* 2-ER-396–397 (TAC ¶¶ 55–57) (summarizing Yolo's representations and how Plaintiffs read and relied upon them); 2-ER-205 (explaining how third party users like Maddie Freeman felt "fully confident" about relying on Yolo's promises to reveal and ban users). Plaintiffs allege that Yolo's promise materially influenced their decision to download and use the app. *See* 2-ER-398, 399 (TAC ¶ 61) (pleading that Yolo's promise to protect user safety materially influenced Plaintiffs' decisions to download and use the app). Plaintiffs also allege that they attempted to enforce Yolo's promise to reveal and remove users who sent Plaintiffs degrading messages through the app. *See* 2-ER-404 (TAC ¶ 80) (describing Carson Bride's fruitless search to uncover his bullies' identities on the day of his death); 2-ER-409 (TAC ¶ 103) (stating that Addie Kennedy asked Yolo to reveal her bullies' identities but Yolo did not follow through); 2-ER-404–407 (TAC ¶ 81–93) (describing how Kristin Bride requested, on multiple occasions, that Yolo reveal the identities of their son's bullies after his passing). Through their pleadings, Plaintiffs show that Yolo's statements played a substantial part in their decisions to use Yolo and determined how Plaintiffs sought relief from bullying. Further, because Plaintiffs plead that Yolo's statements materially affected their conduct, and materiality is a question of fact that must be

accepted as true at default judgment, the lower court was bound to accept Plaintiffs' reliance. *See, e.g.*, *Engalla*, 15 Cal. 4th at 977 (materiality is a question of fact); *TeleVideo Sys., Inc.*, 826 F.2d at 917–18 (well-pleaded facts are accepted as true at default judgment).

In addition to actual reliance, Plaintiffs have demonstrated that their reliance was justifiable. When determining whether reliance is justified, courts assess whether "the person who claims reliance was justified in believing the representation in the light of his own knowledge and experience." *Gray v. Don Miller & Assocs., Inc.*, 35 Cal. 3d 498, 554 (1984); *Hoffman v. 162 North Wolfe LLC*, 228 Cal. App. 4th 1178, 1194 (Cal. Ct. App. 2014) (same). Conversely, reliance is unjustified if a plaintiff "put[s] faith in representations which are preposterous, or which are shown by facts within his observation to be so patently and obviously false that he must have closed his eyes to avoid discovery of the truth." *Beckwith v. Dahl*, 205 Cal. App. 4th 1039, 1067 (Cal. Ct. App. 2012) (quoting *Boeken v. Philip Morris*, *Inc.*, 127 Cal. App. 4th 1640, 1667 (Cal. Ct. App. 2005)); *Seeger v. Odell*, 18 Cal. 2d 409, 415 (1941) (same). But even a plaintiff's negligence in uncovering falsity "is no defense when the [defendant's] misrepresentation was intentional." *LL B Sheet 1, LLC v. Loskutoff*, 362 F. Supp. 3d 804, 827 (N.D. Cal. 2019); *Seeger*, 18 Cal. 2d at 414 (same). In addition, whether reliance is justifiable is generally a question of fact. *See, e.g.*, *Alliance*

*Mortgage Co. v. Rothwell*, 10 Cal. 4th 1226, 1247 (1995) ("[T]he reasonableness of the reliance is ordinarily a question of fact. . . . However, whether a party's reliance was justified may be decided as a matter of law if reasonable minds can come to only one conclusion based on the facts.") (citations omitted).

Plaintiffs-Appellants' reliance on Yolo's statements was justified. 2-ER-396 (TAC ¶ 56). Yolo cannot allege reasonable reliance as a defense since it knew or should have known that it lacked the capacity to follow through on its representations. *See Seeger*, 18 Cal. 24 at 414; *see also* 2-ER-217 (stating that Yolo has one employee); 2-ER-377 (TAC ¶ 3) (stating that Yolo had 10 million active users). Moreover, because justifiable reliance is a question of fact, *see Alliance Mortgage Co.*, 10 Cal. 4th at 1247, and well-pleaded facts must be accepted as true at default judgment, *see TeleVideo Sys., Inc.*, 826 F.2d at 917–18, the district court was constrained to accept that Plaintiffs justifiably relied on Yolo's statements. As reasonable minds could disagree whether Plaintiffs' reliance was justifiable, the lower court's rejection of Plaintiffs' allegations were improper.

The district court further found that reliance was not adequately pleaded because Yolo's statements "your identity will be revealed" or "you will be banned" were directed to bullies, not to the victims who relied on them. 1-ER-30. On Yolo's behalf, the district court argues that Yolo did not intend to induce reliance and that Plaintiffs' reliance was unjustified. *Id*. However, this argument is spun out

of whole cloth: Yolo never raised this argument, nor is the argument supported by any factual record. Instead, the record shows similar language used in the Terms of Service and in other marketing language of Yolo where it consistently uses the "You" voice, directed to all of the users. 1-ER-95. For instance, as acknowledged by the district court, Yolo's download page stated: "By using YOLO you agree to the terms of service (EULA) and privacy policy. YOLO has no tolerance for objectionable content or abusive users. You'll be banned for any inappropriate usage." *Id*. According to the district court's reasoning, this would mean that the first part of this statement regarding agreement to the terms of service and privacy policy is directed to all users, but the statement about banning inappropriate usage is directed only to bullies. Such reading would defy logic, and at the very least, raise a factual dispute as to the statement's intent, meaning, and inducement of reliance.

The cases that the district court cites for support present significantly dissimilar facts. In those cases, defendants misrepresented information to third parties and plaintiffs only learned of such misrepresentations from other sources, and thus failed to plead reliance. *See Sec. Officers Serv., Inc. v. State Comp. Ins. Fund*, 17 Cal. App. 4th 887, 889 (1993) (concerning a security guard company allegedly harmed by an insurance fund's representations to a third-party ratings agency); *Chisley v. Orkin Exterminating Co.*, 2011 WL 2893055, at *6 (Cal. Ct.

App. July 20, 2011) (concerning hotel guests allegedly harmed by a pest extermination company's representations to the hotel but not the guests); *Steinke v. Bank of Am., Nat'l Ass'n*, 2013 WL 3776438, at *4 (Cal. Ct. App. July 17, 2013) (concerning homeowners allegedly harmed by the mortgagee's representations to foreclosure auction bidders and not the homeowners themselves. Here, Plaintiffs adequately pleaded that they were directly exposed to and justifiably relied on Yolo's misrepresentations. *See* 2-ER-396–399, 404–407, 409–411 (TAC ¶¶ 55–57, 61, 80–93, 103, 110, 120).

Furthermore, the lower court applies the wrong intent standard for misrepresentation. In California, the tort of negligent misrepresentation does not require intent to deceive a particular listener; it only requires "an assertion of a fact which is not true by a party who has no reasonable grounds to believe the assertion's truth." *Ligaya Ronduen v. The Geo Group, Inc.*, No. EDCV 23-481, 2023 WL 5506001, at *9 (C.D. Cal 2023); *see Conroy v. Regents of University of California*, 203 Cal. 4th 1244, 1255 (2009) (same). Here, the relevant fact in finding intent is that Yolo, as a company with only one employee, knew it could not reveal and remove bullies on an app that, at one point, had 10 million active users. 2-ER-377 (TAC ¶ 3). That Yolo made a promise it knew it could not keep shows Yolo's intention to induce reliance. Accordingly, this Court should reverse the district court's decision.

### 3. The Sum of Money at Stake is Commensurate to Plaintiffs' Well-Accounted Suffering

Plaintiffs request the Court to reevaluate the lower court's determination that *Eitel* factor four weighs against granting Plaintiffs' default judgment. *See* 1-ER-34, 35. Due to no fault of their own, absent fact discovery records, expert discovery, and other means to prove-up damages, Plaintiffs made repeated attempts to show damages. Plaintiffs previously provided sworn affidavits, itemized calculations of various out-of-pocket expenses and emotional harm, and explanations by Carson Bride's parents regarding the loss of their son and the pain and suffering they experienced. 2-ER-222–242. The lower court should have either (i) granted default judgment, awarding Plaintiffs' the requested damages, (ii) granted an evidentiary damages inquest, (iii) specified what additional information Plaintiffs need to provide to satisfy *Eitel* factor four, or (iv) individually considered each Plaintiffs' request for damages. Instead, the lower court denied Plaintiffs' default judgment motion in its entirety and dismissed the claims against Yolo.

*Eitel* factor four considers "the amount of money at stake in relation to the seriousness of Defendant[s'] conduct." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002). Plaintiffs must show the requested damages are "tailored to defendant's misconduct." *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1012 (C.D. Cal. 2014); *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1100 (N.D. Cal. 2014).

Plaintiffs meet this standard, having provided substantial evidence that their request for damages stands in accordance with Defendant's misconduct. Plaintiff A.O. requested $37,000 (2-ER-224), A.K. requested $81,900 (2-ER-227), and A.C. requested $105,980 (2-ER-231). Each party provided an itemized breakdown of how these sums were calculated, including out-of-pocket medication and psychotherapy. *Id.* Plaintiff Kristin Bride requested $100 million in damages, complete with an itemized list, that accounts for the child's death and associated parental damages. Carson's burial expenses, Ms. Bride's medical expenses (explaining how losing her son has impacted her cancer treatment), and grief counseling. 2-ER-237-238. Ms. Bride's request refenced similar cases of products liability action that involved the death of a young child where the settlement amount reached $35-$46 million (*See* 2-ER-158; 2-ER-237-238) and sought the Court's review and hearing to discern the issue of damages in her case. However, no damages calculation or itemized list of expenses can comprehensively convey the distress Ms. Bride experienced the morning she found Carson's body, the "eternal sadness" that pervades every "family dinner, holiday or vacation," and the grief she is burdened to carry for the rest of her life. 2-ER-235.

Despite Plaintiffs' best efforts to provide itemized damages, the district court concluded Plaintiffs' requests were not reasonable, and that *Eitel* factor four weighed against granting Plaintiffs a default judgment. 1-ER-35. The district court

grounded this decision solely in the conclusions that Plaintiffs' request for an evidentiary damages hearing would not "immunize them from further inquiry" and that the court typically grants damages on default that exceed $1 million in sum when these damages were "related to a contract." *Id.*

These conclusions overlook the fact that Plaintiffs' request for damages upon default was complicated by three hurdles: (i) The district court ordered Plaintiffs to move for default judgment by October 30, 2025, leaving Plaintiffs without an opportunity to request an evidentiary damages hearing before submitting the Motion for Default Judgment, 1-ER-74; (ii) little to no discovery evidence was made available to Plaintiffs; and (iii) through a damages hearing with expert input, it would have been possible to establish a mechanism for calculating damages that factor in emotional suffering and costs. Yet, under these circumstances and hurdles, Plaintiffs made good faith effort to establish damages. Additionally, Plaintiffs A.O., A.K., and A.C. each requested damages that were directly and reasonably connected to their experiences on Yolo which were similar to one another and substantially less than $1 million.

Therefore, the district court erred in wholesale denying default judgment. Plaintiffs request the Court vacate the district court's decision and require adherence to one of four options: (i) grant default judgment, awarding Plaintiffs' the requested damages; (ii) grant an evidentiary damages inquest, such that

Plaintiffs can provide the further specifications and expert testimony necessary to ensure damages are appropriately calculated; (iii) specify the additional information Plaintiffs need to provide to satisfy *Eitel* factor four; or (iv) individually consider each Plaintiffs' request for damages. *See* Fed R. Civ. P. 54 (allowing the court to direct "entry of a final judgment as to one or more, but fewer than all, claims or parties.").

## III. The District Court Erred in Denying Class Certification

The district court denied class certification, finding that Plaintiffs-Appellants failed to show that typicality, adequacy, predominance, and superiority were fulfilled. 3-ER-20 (order dismissing action). In denying certification, the district court relied on factual inferences unsupported by the record to conclude that the proposed class required individualized findings of bullying and therefore did not meet the standards under Rule 23. Fed. R. Civ. P. 23. The district court did correctly find that Plaintiffs-Appellants demonstrated numerosity and adequacy of counsel. 3-ER-10-11. This Court should reverse and remand so that Plaintiffs-Appellants can move to certify the class after resolution of the default and Henrion's liability and after completion of relevant discovery.

### A. Typicality & Adequacy Are Satisfied Under the Uniform Exposure Theory of Liability

The district court erred in its analysis of typicality and adequacy by making factual inferences unsupported by the record, incorrectly distinguishing between

the experiences of bullied and non-bullied users, and ignoring the uniform, class-wide exposure to Defendant-Appellee's misrepresentations. 3-ER-11-14. The experiences of the named plaintiffs reflect the same type of harm arising from the same conduct as the rest of the class.

Typicality requires that the claims and defenses of the representative parties are typical to those of the class. Fed. R. Civ. P. 23(a)(3). Claims must be "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). "In determining whether typicality is met, the focus should be on the defendants' conduct and plaintiff's legal theory." *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005). The operative inquiry is "whether other members have the same or similar injury, whether the action is based on conduct that is not unique to the named plaintiffs, and whether other class members have been injured in the same course of conduct." *See Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992)).

Here, Plaintiff-Appellants' claims arose from uniform exposure to Defendant-Appellee's misrepresentations, resulting in a psychologically harmful environment for all class members. The district court interpreted the proposed class as combining non-alike groups—bullied and non-bullied users—and viewed their

interests as incompatible. 3-ER-11-12. It conjectured that "[p]eople who were not bullied or harassed on the app may not have relied on the alleged misrepresentations because they were never worried about bullying or harassing behavior from others." 3-ER-17. This speculation relies on factual inferences to distinguish between bullied and non-bullied users without any supporting evidence concerning the extent of bullying on Yolo's platform.

Through its onboarding process, Yolo uniformly represented to users that abusive or harassing conduct would not be tolerated. 2-ER-375-378, 396-398 (TAC ¶¶ 1-2, 5-6, 54-58). Relying on these representations, users signed up for the app expecting a safe online environment. *See* 2-ER-408, 409, 411 (*See* TAC ¶¶ 99, 106, 115); 2-ER-205-206 (Freeman Decl. ¶ 6) (understanding these statements as a "legitimate promise by the app to protect users from harm"); 2-ER-226 (Kennedy Decl. ¶ 3(c)). Instead, they were exposed to a toxic, psychologically harmful space where rampant bullying went unchecked. 2-ER-385-388 (TAC ¶¶ 27-31) (explaining how anonymous apps create a psychologically damaging environment for teenagers); 2-ER-207-206 (Freeman Decl. ¶ 7) (expressing surprise to "see how much bullying still occurred on the app"). This experience was typical of all users, whether personally targeted by bullies or not. 2-ER-399-400 (TAC ¶ 62) (quoting app store reviews discussing the app's negative environment); 2-ER-394-395

(TAC ¶¶ 49-52) (app-store metrics and press reporting showed that YOLO captured significant teenage audience).

The psychosocial harms of being exposed to bullying without restriction in digital spaces permeate every user's experience. 2-ER-206-208 (Freeman Decl. ¶ 8-9) (describing the psychological toll of anonymous apps). Imagine a school that represents itself as a bully-free zone but does not enforce its policies. Students would enroll there expecting an educational environment where authorities step in to protect students. Instead, students would be uniformly exposed to a negative psychosocial climate where students can harass others with impunity. Said students would experience stress, anxiety, and a loss of psychological safety, whether as a victim or bystander. This same dynamic played out on YOLO, enhanced by the app's anonymity feature and its empty promises of unmasking and banning accounts. Whether users were directly bullied or not, they experienced harm, feeling "helpless, frustrated, isolated, anxious and mentally tortured," due to the platform's misrepresentations that they would reveal and ban inappropriate users. *See* 2-ER-392 (*See* TAC ¶ 44).

Through third-party reports and sworn declarations, Plaintiffs-Appellants presented credible evidence of uniform class-wide exposure to misrepresentations and the resulting class-wide harm. A defaulting defendant is bound by the complaint's factual allegations and cannot challenge certification based on facts it

could have contested absent default. *See In re Anderson*, 641 B.R. 1, 54 (Bankr. S.D.N.Y. 2022) (explaining defaulting defendant cannot relitigate factual determinations underlying class certification) (citing *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912 (3d Cir. 1992)). Evidence about the extent of bullying was exclusively within Defendant-Appellee's control, 2-ER-412 (TAC ¶ 124), and default cannot allow Defendant-Appellee to evade certification by withholding evidence uniquely within its possession.

Based on the allegations in the complaint, the class meets the typicality requirement. Class members were uniformly exposed to Yolo's misrepresentations at onboarding. 2-ER-396-398 (TAC ¶¶ 55-58). Relying on these representations, class members used the app and experienced harm through a negative, anxiety-inducing digital space. Yolo's conduct reached all app users and generated the same type of harm for all class members.

Adequacy requires that the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). This inquiry has two components: (1) whether the named plaintiffs have conflicts of interest with absent class members, and (2) whether class counsel is qualified and capable of prosecuting the action vigorously on behalf of the class. *Hanlon*, 150 F.3d at 1020. The district court erroneously relied on factual inferences not supported by the

record to conclude that the Plaintiffs-Appellants were not capable of prosecuting vigorously on behalf of the class based on the severity of their experiences.

The representative Plaintiffs-Appellants' experience on Yolo was not an aberration: it represented the typical experience. The harm that Carson Bride experienced differs from other class members in gravity but not in type. 2-ER-401-404 (TAC ¶¶ 66-80) (describing how Yolo's failure to reveal the identity of Carson's harassers likely contributed to his suicide). Named plaintiffs satisfy typicality even if their injuries are more severe. *See Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Typicality can be satisfied despite different factual circumstances surrounding the manifestation of the defect") (citing *Daffin v. Ford Motor Co.*, 458 F.3d 549 (6th Cir. 2006)); *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). Like every class member, Carson was a minor exposed to Yolo's uniform onboarding representations and relied on them as assurances of safety and accountability. 2-ER-396 (TAC ¶ 55).

Even putative class members who were not bullied were harmed through their exposure to a toxic, ungoverned digital space, just as Carson was. Yolo's misrepresentations lulled users into believing they were signing up for a controlled, safe online space. *See* 2-ER-396-398 (*See* TAC ¶¶ 53-58). The lack of enforcement signaled to users that the platform was a no-man's land with no help available. 2-ER-399-400 (TAC ¶ 62), 403-4 (¶¶75-80) (Carson Bride's experience), 404-406

(¶¶ 81-93) (Kristin Bride's experience), 408-409 (¶¶ 101-104) (A.K.'s experience), 409-410 (¶¶ 107-112) (A.C.'s experience), 411 (¶¶ 116-120) (A.O.'s experience). This made them feel isolated, anxious, and powerless. 2-ER-409 (TAC ¶ 104) (A.K. suffered "emotional and psychological harm"), 410 (¶ 112) ("A.C. suffered severe emotional distress and diminished self-esteem"), 411 (¶ 120) ("A.O. experienced emotional suffering and diminished trust"). For the named plaintiffs, these feelings were magnified to the extreme; however, their experiences were not unique.

Likewise, Kristin Bride was a user relying on Defendant-Appellee's representations to unmask the accounts that had harassed her son. 2-ER-404-407 (TAC ¶¶ 81-93) (detailing Kristin Bride's attempts to contact Yolo). Just like the class members, she felt invalidated and helpless upon realizing that Defendant-Appellee would not help her. 2-ER-407 (TAC ¶¶ 95-96). Although she is an adult, her experience mirrors other class members.

The representative parties satisfy the adequacy requirement because their interests align with those of the class members. Fed. R. Civ. P. 23(a)(4). The difference in damages based on the harm experienced by a user is a question to which an expert could have testified, had Defendant-Appellee not defaulted. Defendants cannot be allowed to strategically default to evade class certification in the absence of expert testimony.

### B. Commonality & Predominance Are Satisfied By Common Questions Arising Out Of Defendant-Appellee's Uniform Misrepresentations and Putative Class Members Uniform Exposure

The district court erred in its assessment that common questions do not predominate. 3-ER-14-17. Its inquiry into how individuals perceived the Defendant-Appellee's misrepresentations again relied on unsupported factual inferences, and its justifiable reliance analysis failed to follow Ninth Circuit precedent. *Id.*

Commonality requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Where questions common to class members present significant issues that can be resolved in a single adjudication 'there is clear justification for handling the dispute on a representative rather than on an individual basis.'" *Rodman v. Safeway, Inc.*, 2014 WL 988992, at *4 (N.D. Cal. 2014) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) (internal quotation marks and citation omitted)). Predominance requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3); *Amchem Prods.*, 521 U.S. at 623–24. "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will be tried separately, such as damages or some affirmative defenses peculiar to some individual class

members.'" *Tyson Foods v. Bouaphakeo*, 577 U.S. 442, 453–54 (2016) (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, pp. 123–24 (3d ed. 2005)).

The central question is whether Defendant-Appellee's statements about banning violators and revealing their identities were false and misleading. The uniformity of Yolo's representations to users as well as the common understanding of what those representations meant fulfills commonality. 2-ER-190 (Pl.'s Mem. in Supp. Class Cert. at 19) (contemporaneous news coverage demonstrated widespread reliance resulting in frustration); 2-ER-226 (Kennedy Decl. ¶ 3(c), (f)–(g)) (Plaintiff experience reveals common reliance mechanism).

The district court incorrectly inferred that the representations made to users invited individual interpretation, and therefore no common question predominated. 3-ER-16. At this stage of litigation, Plaintiffs-Appellants presented plentiful evidence demonstrating a common understanding of Yolo's statements. *See* 2-ER-399-400 (*See* TAC ¶ 62) (app store reviews contemporaneously corroborated widespread reliance); 2-ER-192 (Pl.'s Mem. in Supp. Class Cert. at 21–22) (prevalence of "YOLO hacks" allegedly teaching how to reveal anonymous senders demonstrated common reliance); 2-ER-226 (Kennedy Decl. ¶¶ 3(c), (f)–(g)) (Addie Kennedy attempted to unmask in reliance on YOLO's representations);

2-ER-233 (Kristin Bride Decl. App. A) (Carson Bride's final phone searches regarding YOLO's unmasking corroborate reliance).

Because Defendant-Appellee defaulted, the court must accept as true the well-pleaded factual allegations of the complaint. *TeleVideo Sys., Inc.*, 826 F.2d at 917–18. The district court's reasoning unfairly burdened Plaintiffs-Appellants with demonstrating user response in the absence of discovery and factual evidence such as Yolo's internal data as evidence of class wide exposure, reliance, and user response. Yolo's representations to users were uniform and questions arising therefrom are common to all users and predominate the misrepresentation claim.

Furthermore, the Ninth Circuit recognizes that, in cases where every class member was exposed to the same material misrepresentation in the same form at the same point of interaction, the uniform exposure supports a class-wide "inference that reliance can be shown via common proof." *Noohi v. Johnson & Johnson Consumer Inc.*, 146 F.4th 854, 869 (9th Cir. 2025); *see also Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 ("If the trial court finds the material misrepresentations have been made to the entire class, an inference of reliance arises as to the class."); *Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1019 (9th Cir. 2024) ("Because materiality (and, hence, in this case reliance) may be proved by reference to an objective, reasonable consumer standard, reliance . . . is generally susceptible to common proof."). The district court attempted to

distinguish this line of cases on the basis that the claims therein did not have a "critical predicate clause—one that indicates the representation will be true only in certain circumstances." 3-ER-16. This distinction is not supported by precedent and mischaracterizes the nature of Yolo's promises. Bullying on an anonymous messaging app is an inevitability, not a potentiality. 2-ER-385-390 (TAC ¶¶ 27-40) (describing how anonymous apps were known hotbeds for teen cyberbullying). Reliance is not an individualized issue in a class where every user was exposed to the same misrepresentations at onboarding and used a platform that was not regulated as promised.

Commonality and predominance are satisfied. Fed. R. Civ. P. 23(a)(2), (b)(3). Users experienced a common, class wide pattern in their interactions with Yolo. Contrary to the onboarding representation, attempts to unmask bullies went unfulfilled, leaving users frustrated, anxious, and helpless. *See* 2-ER-392, 409, 420 (*See* TAC ¶¶ 44, 103, 191-193). This phenomenon was collective, observable, and grounded in the same misrepresentations. Yolo's conduct therefore produced predominant questions concerning the app's misrepresentations and their impact on users collectively.

### C. The Class's Shared Interests and Manageability Make Centralized Adjudication Superior

In its superiority analysis, the district court correctly found that factor (B) was satisfied but erred in its analysis of factors (A) and (D). 3-ER-17-20. Rule

23(b)(3) requires a showing that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Factor (A) considers "the class members' interests in individually controlling the prosecution or defense of separate actions." Fed. R. Civ. P. 23(b)(3)(a). Here, the district court again mischaracterized the class's claims as requiring individualized findings of bullying. The claims arise out of the same conduct which caused the same type of harm to all class members, although to differing degrees. "Different damages need not destroy class cohesion. Thus, the Ninth Circuit recently discussed with approval recent cases affirming certification, 'no matter how individualized the issue of damages may be,' 'even when some consumers might have no harms at all.'" *Brown v. Hain Celestial Grp., Inc.*, No. C 11-03082-LB, 2014 WL 6483216, at *12 (N.D. Cal. Nov. 18, 2014).

The district court expressed further skepticism about the superiority of a class action in light of the potential emotional stakes involved for some class members. 3-ER-18. Liability turns on Defendant-Appellee's uniform conduct, rather than on individualized interactions, and class members wishing to pursue individualized claims may do so by opting out under Rule 23(b)(3). Class certification promotes efficient adjudication without sacrificing autonomy.

Factor (D) concerns the manageability of a class action. Fed. R. Civ. P. 23(b)(3)(d).

The district court misconstrued the proposed class definition as requiring a finding of bullying or harassment. Identifying users between the ages of 13 to 17 who were exposed to Yolo's misrepresentations at onboarding is easily achieved via the platform's internal data. The revised class is one "[w]here recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis" which further cuts in favor of class certification. *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 486 (C.D. Cal. 2012) (quoting *Wolin*, 617 F.3d at 1175); *see also Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980). Had the district court permitted a damages inquest, a uniform mechanism for assessing damages could have been established, alleviating manageability regarding damages calculations.

Defendant-Appellee's default materially strengthens the superiority case given that discovery opportunities are mostly foreclosed. Individual actions are practically impossible to litigate now that Defendant-Appellee has ceased participating. At this juncture, class discovery presents the best opportunity for the class to litigate its claims. Default cannot become a means of avoiding class certification. A single, centralized proceeding is the only viable way to adjudicate Defendant-Appellee's conduct and provide remedy to absent class members.

*Whitaker v. Bennett Law, PLLC*, 2014 WL 5454398 (S.D. Cal. Oct. 27, 2014); *Lehman v. Calls After Hours, LLC*, No. 1:18-cv-2601-SO, 2019 WL 3982950, at *4–6 (N.D. Ohio Aug. 16, 2019). Manageability favors class treatment, especially after default.

## CONCLUSION

For the above reasons, this Court should reverse the district court's order dismissing Plaintiffs' claims against Yolo and remand for the case to move forward.

Dated: November 6, 2026

Respectfully submitted,

By: /s/ Juyoun Han
Juyoun Han
Eisenberg & Baum, LLP
24 Union Square
New York, NY 10003
(212) 353-8700

*Attorneys for Plaintiffs-Appellants*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 26-3757

I am the attorney or self-represented party.

**This brief contains** 13,948 **words,** including ______ words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

- [x] complies with the word limit of Cir. R. 32-1.
- [ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.
- [ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).
- [ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.
- [ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  - [ ] it is a joint brief submitted by separately represented parties.
  - [ ] a party or parties are filing a single brief in response to multiple briefs.
  - [ ] a party or parties are filing a single brief in response to a longer joint brief.
- [ ] complies with the length limit designated by court order dated ______.
- [ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/Juyoun Han **Date** 11/6/2026

*(use "s/[typed name]" to sign electronically-filed documents)*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)** 26-3757

The undersigned attorney or self-represented party states the following:

- (●) I am unaware of any related cases currently pending in this court.
- ( ) I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.
- ( ) I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** s/ Juyoun Han **Date** Nov 6, 2026

*(use "s/[typed name]" to sign electronically-filed documents)*

# ADDENDUM

## Pursuant to Ninth Circuit Rule 28-2.7

# Table of Contents

**Page**

Federal Rules of Civil Procedure, Rule 15 ........................................ ADD-1

LII > Federal Rules of Civil Procedure
> **Rule 15. Amended and Supplemental Pleadings**

# Rule 15. Amended and Supplemental Pleadings

(a) Amendments Before Trial.

(1) *Amending as a Matter of Course.* A party may amend its pleading once as a matter of course no later than:

(A) 21 days after serving it, or

(B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

(2) *Other Amendments.* In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

(3) *Time to Respond.* Unless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later.

(b) Amendments During and After Trial.

(1) *Based on an Objection at Trial.* If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended. The court should freely permit an amendment when doing so will aid in

presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits. The court may grant a continuance to enable the objecting party to meet the evidence.

(2) *For Issues Tried by Consent.* When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

(c) Relation Back of Amendments.

(1) *When an Amendment Relates Back.* An amendment to a pleading relates back to the date of the original pleading when:

(A) the law that provides the applicable statute of limitations allows relation back;

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

(2) *Notice to the United States.* When the United States or a United States officer or agency is added as a defendant by amendment, the notice requirements of Rule 15(c)(1)(C)(i) and (ii) are satisfied if, during the stated period, process was delivered or mailed to the United States attorney or the United States attorney's designee, to the Attorney General of the United States, or to the officer or agency.

(d) Supplemental Pleadings. On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

Notes

(As amended Jan. 21, 1963, eff. July 1, 1963; Feb. 28, 1966, eff. July 1, 1966; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 30, 1991, eff. Dec. 1, 1991; Pub. L. 102–198, §11(a), Dec. 9, 1991, 105 Stat. 1626; Apr. 22, 1993, eff. Dec. 1, 1993; Apr. 30, 2007, eff. Dec. 1, 2007; Mar. 26, 2009, eff. Dec. 1, 2009.)

### Notes of Advisory Committee on Rules—1937

See generally for the present federal practice, [former] Equity Rules 19 (Amendments Generally), 28 (Amendment of Bill as of Course), 32 (Answer to Amended Bill), 34 (Supplemental Pleading), and 35 (Bills of Revivor and Supplemental Bills—Form); U.S.C., Title 28, §§399 [now 1653] (Amendments to show diverse citizenship) and [former] 777 (Defects of Form; amendments). See *English Rules Under the Judicature Act* (The Annual Practice, 1937) O. 28, r.r. 1–13; O. 20, r. 4; O. 24, r.r. 1–3.

*Note to Subdivision (a)*. The right to serve an amended pleading once as of course is common. 4 Mont.Rev.Codes Ann. (1935) §9186; 1 Ore.Code Ann. (1930) §1–904; 1 S.C.Code (Michie, 1932) §493; *English Rules Under the Judicature Act* (The Annual Practice, 1937) O. 28, r. 2. Provision for amendment of pleading before trial, by leave of court, is in almost every code. If there is no statute the power of the court to grant leave is said to be inherent. Clark, *Code Pleading*, (1928) pp. 498, 509.

*Note to Subdivision (b)*. Compare [former] Equity Rule 19 (Amendments Generally) and code provisions which allow an amendment "at any time in furtherance of justice," (e. g., Ark.Civ.Code (Crawford, 1934) §155) and which allow an amendment of pleadings to conform to the evidence, where the adverse party has not been misled and prejudiced (e.g., N.M.Stat.Ann. (Courtright, 1929) §§105–601, 105–602).

*Note to Subdivision (c)*. "Relation back" is a well recognized doctrine of recent and now more frequent application. Compare Ala.Code Ann. (Michie, 1928) §9513; Ill.Rev.Stat. (1937) ch. 110, §170(2); 2 Wash.Rev.Stat.Ann. (Remington, 1932) §308–3(4). See U.S.C., Title 28, §399 [now 1653] (Amendments to show diverse citizenship) for a provision for "relation back."

*Note to Subdivision (d)*. This is an adaptation of Equity Rule 34 (Supplemental Pleading).

### Notes of Advisory Committee on Rules—1963 Amendment

Rule 15(d) is intended to give the court broad discretion in allowing a supplemental pleading. However, some cases, opposed by other cases and criticized by the commentators, have taken the rigid and formalistic view that where the original complaint fails to state a claim upon which relief can be granted, leave to serve a supplemental complaint must be denied. See *Bonner v. Elizabeth Arden, Inc.*, 177 F.2d 703 (2d Cir. 1949); *Bowles v. Senderowitz*, 65 F.Supp. 548 (E.D.Pa.), rev'd on other grounds, 158 F.2d 435 (3d Cir. 1946), cert. denied, *Senderowitz v. Fleming*, 330 U.S. 848, 67 S.Ct. 1091, 91 L.Ed. 1292 (1947); cf. *LaSalle Nat. Bank v. 222 East Chestnut St. Corp.*, 267 F.2d 247 (7th Cir.), cert. denied, 361 U.S. 836, 80 S.Ct. 88, 4 L.Ed.2d 77 (1959). But see *Camilla Cotton Oil Co. v. Spencer Kellogg & Sons*, 257

F.2d 162 (5th Cir. 1958); *Genuth v. National Biscuit Co.*, 81 F.Supp. 213 (S.D.N.Y. 1948), app. dism., 177 F.2d 962 (2d Cir. 1949); 3 *Moore's Federal Practice* 15.01 [5] (Supp. 1960); 1A Barron & Holtzoff, *Federal Practice & Procedure* 820–21 (Wright ed. 1960). Thus plaintiffs have sometimes been needlessly remitted to the difficulties of commencing a new action even though events occurring after the commencement of the original action have made clear the right to relief.

Under the amendment the court has discretion to permit a supplemental pleading despite the fact that the original pleading is defective. As in other situations where a supplemental pleading is offered, the court is to determine in the light of the particular circumstances whether filing should be permitted, and if so, upon what terms. The amendment does not attempt to deal with such questions as the relation of the statute of limitations to supplemental pleadings, the operation of the doctrine of laches, or the availability of other defenses. All these questions are for decision in accordance with the principles applicable to supplemental pleadings generally. Cf. *Blau v. Lamb*, 191 F.Supp. 906 (S.D.N.Y. 1961); *Lendonsol Amusement Corp. v. B. & Q. Assoc., Inc.*, 23 F.R.Serv. 15d. 3, Case 1 (D.Mass. 1957).

**Notes of Advisory Committee on Rules—1966 Amendment**

Rule 15(c) is amplified to state more clearly when an amendment of a pleading changing the party against whom a claim is asserted (including an amendment to correct a misnomer or misdescription of a defendant) shall "relate back" to the date of the original pleading.

The problem has arisen most acutely in certain actions by private parties against officers or agencies of the United States. Thus an individual denied social security benefits by the Secretary of Health, Education, and Welfare may secure review of the decision by bringing a civil action against that officer within sixty days. 42 U.S.C. §405(g) (Supp. III, 1962). In several recent cases the claimants instituted timely action but mistakenly named as defendant the United States, the Department of HEW, the "Federal Security Administration" (a nonexistent agency), and a Secretary who had retired from the office nineteen days before. Discovering their mistakes, the claimants moved to amend their complaints to name the proper defendant; by this time the statutory sixty-day period had expired. The motions were denied on the ground that the amendment "would amount to the commencement of a new proceeding and would not relate back in time so as to avoid the statutory provision * * * that suit be brought within sixty days * * *" *Cohn v. Federal Security Adm.*, 199 F.Supp. 884, 885 (W.D.N.Y. 1961); see also *Cunningham v. United States*, 199 F.Supp. 541 (W.D.Mo. 1958); *Hall v. Department of HEW*, 199 F.Supp. 833 (S.D.Tex. 1960); *Sandridge v. Folsom, Secretary of HEW*, 200 F.Supp. 25 (M.D.Tenn. 1959). [The Secretary of Health, Education, and Welfare has approved certain ameliorative regulations under 42 U.S.C. §405(g). See 29 Fed.Reg. 8209 (June 30, 1964); Jacoby, The Effect of Recent Changes in the Law of "Nonstatutory" Judicial Review, 53 Geo.L.J. 19, 42–43 (1964); see also *Simmons v. United States Dept. HEW*, 328 F.2d 86 (3d Cir. 1964).]

Analysis in terms of "new proceeding" is traceable to *Davis v. L. L. Cohen & Co.*, 268 U.S. 638 (1925), and *Mellon v. Arkansas Land & Lumber Co.*, 275 U.S. 460 (1928), but those cases antedate the adoption of the Rules which import different criteria for determining when an amendment is to "relate back". As lower courts have continued to rely on the *Davis* and *Mellon* cases despite the contrary intent of the Rules, clarification of Rule 15(c) is considered advisable.

Relation back is intimately connected with the policy of the statute of limitations. The policy of the statute limiting the time for suit against the Secretary of HEW would not have been offended by allowing relation back in the situations described above. For the government was put on notice of the claim within the stated period—in the particular instances, by means of the initial delivery of process to a responsible government official (see Rule 4(d)(4) and (5). In these circumstances, characterization of the amendment as a new proceeding is not responsive to the reality, but is merely question-begging; and to deny relation back is to defeat unjustly the claimant's opportunity to prove his case. See the full discussion by Byse, *Suing the "Wrong" Defendant in Judicial Review of Federal Administrative Action: Proposals for Reform*, 77 Harv.L.Rev. 40 (1963); see also Ill.Civ.P.Act §46(4).

Much the same question arises in other types of actions against the government (see *Byse*, supra, at 45 n. 15). In actions between private parties, the problem of relation back of amendments changing defendants has generally been better handled by the courts, but incorrect criteria have sometimes been applied, leading sporadically to doubtful results. See 1A Barron & Holtzoff, *Federal Practice & Procedure* §451 (Wright ed. 1960); 1 id. §186 (1960); 2 id. §543 (1961); 3 *Moore's Federal Practice*, par. 15.15 (Cum.Supp. 1962); Annot., *Change in Party After Statute of Limitations Has Run*, 8 A.L.R.2d 6 (1949). Rule 15(c) has been amplified to provide a general solution. An amendment changing the party against whom a claim is asserted relates back if the amendment satisfies the usual condition of Rule 15(c) of "arising out of the conduct * * * set forth * * * in the original pleading," and if, within the applicable limitations period, the party brought in by amendment, first, received such notice of the institution of the action—the notice need not be formal—that he would not be prejudiced in defending the action, and, second, knew or should have known that the action would have been brought against him initially had there not been a mistake concerning the identity of the proper party. Revised Rule 15(c) goes on to provide specifically in the government cases that the first and second requirements are satisfied when the government has been notified in the manner there described (see Rule 4(d)(4) and (5). As applied to the government cases, revised Rule 15(c) further advances the objectives of the 1961 amendment of Rule 25(d) (substitution of public officers).

The relation back of amendments changing plaintiffs is not expressly treated in revised Rule 15(c) since the problem is generally easier. Again the chief consideration of policy is that of the statute of limitations, and the attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs. Also relevant is the

amendment of Rule 17(a) (real party in interest). To avoid forfeitures of just claims, revised Rule 17(a) would provide that no action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed for correction of the defect in the manner there stated.

**Notes of Advisory Committee on Rules—1987 Amendment**

The amendments are technical. No substantive change is intended.

**Notes of Advisory Committee on Rules—1991 Amendment**

The rule has been revised to prevent parties against whom claims are made from taking unjust advantage of otherwise inconsequential pleading errors to sustain a limitations defense.

*Paragraph (c)(1)*. This provision is new. It is intended to make it clear that the rule does not apply to preclude any relation back that may be permitted under the applicable limitations law. Generally, the applicable limitations law will be state law. If federal jurisdiction is based on the citizenship of the parties, the primary reference is the law of the state in which the district court sits. *Walker v. Armco Steel Corp*., 446 U.S. 740 (1980). If federal jurisdiction is based on a federal question, the reference may be to the law of the state governing relations between the parties. *E.g., Board of Regents v. Tomanio*, 446 U.S. 478 (1980). In some circumstances, the controlling limitations law may be federal law. *E.g., West v. Conrail, Inc*., 107 S.Ct. 1538 (1987). Cf. *Burlington Northern R. Co. v. Woods*, 480 U.S. 1 (1987); *Stewart Organization v. Ricoh*, 108 S.Ct. 2239 (1988). Whatever may be the controlling body of limitations law, if that law affords a more forgiving principle of relation back than the one provided in this rule, it should be available to save the claim. Accord, *Marshall v. Mulrenin*, 508 F.2d 39 (1st cir. 1974). If *Schiavone v. Fortune*, 106 S.Ct. 2379 (1986) implies the contrary, this paragraph is intended to make a material change in the rule.

*Paragraph (c)(3)*. This paragraph has been revised to change the result in *Schiavone v. Fortune, supra*, with respect to the problem of a misnamed defendant. An intended defendant who is notified of an action within the period allowed by Rule 4(m) for service of a summons and complaint may not under the revised rule defeat the action on account of a defect in the pleading with respect to the defendant's name, provided that the requirements of clauses (A) and (B) have been met. If the notice requirement is met within the Rule 4(m) period, a complaint may be amended at any time to correct a formal defect such as a misnomer or misidentification. On the basis of the text of the former rule, the Court reached a result in *Schiavone v. Fortune* that was inconsistent with the liberal pleading practices secured by Rule 8. See Bauer, Schiavone: *An Un-Fortune-ate Illustration of the Supreme Court's Role as Interpreter of the Federal Rules of Civil Procedure* , 63 NOTRE DAME L. REV. 720 (1988); Brussack, *Outrageous Fortune: The Case for Amending Rule 15(c) Again*, 61 S. CAL. L. REV. 671 (1988); Lewis, *The Excessive History of Federal Rule 15(c) and Its Lessons for Civil Rules Revision*, 86 MICH. L. REV. 1507 (1987).

In allowing a name-correcting amendment within the time allowed by Rule 4(m), this rule allows not only the 120 days specified in that rule, but also any additional time resulting from any extension ordered by the court pursuant to that rule, as may be granted, for example, if the defendant is a fugitive from service of the summons.

This revision, together with the revision of Rule 4(i) with respect to the failure of a plaintiff in an action against the United States to effect timely service on all the appropriate officials, is intended to produce results contrary to those reached in *Gardner v. Gartman*, 880 F.2d 797 (4th cir. 1989), *Rys v. U.S. Postal Service*, 886 F.2d 443 (1st cir. 1989), *Martin's Food & Liquor, Inc. v. U.S. Dept. of Agriculture*, 14 F.R.S.3d 86 (N.D. Ill. 1988). *But cf. Montgomery v. United States Postal Service*, 867 F.2d 900 (5th cir. 1989), *Warren v. Department of the Army*, 867 F.2d 1156 (8th cir. 1989); *Miles v. Department of the Army*, 881 F.2d 777 (9th cir. 1989), *Barsten v. Department of the Interior*, 896 F.2d 422 (9th cir. 1990); *Brown v. Georgia Dept. of Revenue*, 881 F.2d 1018 (11th cir. 1989).

### Congressional Modification of Proposed 1991 Amendment

Section 11(a) of Pub. L. 102–198 [set out as a note under section 2074 of this title] provided that Rule 15(c)(3) of the Federal Rules of Civil Procedure as transmitted to Congress by the Supreme Court to become effective on Dec. 1, 1991, is amended. See 1991 Amendment note below.

### Notes of Advisory Committee on Rules—1993 Amendment

The amendment conforms the cross reference to Rule 4 to the revision of that rule.

### Committee Notes on Rules—2007 Amendment

The language of Rule 15 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only.

Former Rule 15(c)(3)(A) called for notice of the "institution" of the action. Rule 15(c)(1)(C)(i) omits the reference to "institution" as potentially confusing. What counts is that the party to be brought in have notice of the existence of the action, whether or not the notice includes details as to its "institution."

### Committee Notes on Rules—2009 Amendment

Rule 15(a)(1) is amended to make three changes in the time allowed to make one amendment as a matter of course.

Former Rule 15(a) addressed amendment of a pleading to which a responsive pleading is required by distinguishing between the means used to challenge the pleading. Serving a responsive pleading terminated the right to amend. Serving a motion attacking the pleading

did not terminate the right to amend, because a motion is not a "pleading" as defined in Rule 7. The right to amend survived beyond decision of the motion unless the decision expressly cut off the right to amend.

The distinction drawn in former Rule 15(a) is changed in two ways. First, the right to amend once as a matter of course terminates 21 days after service of a motion under Rule 12(b), (e), or (f). This provision will force the pleader to consider carefully and promptly the wisdom of amending to meet the arguments in the motion. A responsive amendment may avoid the need to decide the motion or reduce the number of issues to be decided, and will expedite determination of issues that otherwise might be raised seriatim. It also should advance other pretrial proceedings.

Second, the right to amend once as a matter of course is no longer terminated by service of a responsive pleading. The responsive pleading may point out issues that the original pleader had not considered and persuade the pleader that amendment is wise. Just as amendment was permitted by former Rule 15(a) in response to a motion, so the amended rule permits one amendment as a matter of course in response to a responsive pleading. The right is subject to the same 21-day limit as the right to amend in response to a motion.

The 21-day periods to amend once as a matter of course after service of a responsive pleading or after service of a designated motion are not cumulative. If a responsive pleading is served after one of the designated motions is served, for example, there is no new 21-day period.

Finally, amended Rule 15(a)(1) extends from 20 to 21 days the period to amend a pleading to which no responsive pleading is allowed and omits the provision that cuts off the right if the action is on the trial calendar. Rule 40 no longer refers to a trial calendar, and many courts have abandoned formal trial calendars. It is more effective to rely on scheduling orders or other pretrial directions to establish time limits for amendment in the few situations that otherwise might allow one amendment as a matter of course at a time that would disrupt trial preparations. Leave to amend still can be sought under Rule 15(a)(2), or at and after trial under Rule 15(b).

Abrogation of Rule 13(f) establishes Rule 15 as the sole rule governing amendment of a pleading to add a counterclaim.

Amended Rule 15(a)(3) extends from 10 to 14 days the period to respond to an amended pleading.

### Amendment by Public Law

**1991** —Subd. (c)(3). Pub. L. 102–198 substituted "Rule 4(j)" for "Rule 4(m)".

Committee Notes on Rules—2023

Rule 15(a)(1) is amended to substitute "no later than" for "within" to measure the time allowed to amend once as a matter of course. A literal reading of "within" would lead to an untoward practice if a pleading is one to which a responsive pleading is required and neither a responsive pleading nor one of the Rule 12 motions has been served within 21 days after service of the pleading. Under this reading, the time to amend once as a matter of course lapses 21 days after the pleading is served and is revived only on the later service of a responsive pleading or one of the Rule 12 motions. There is no reason to suspend the right to amend in this way. "No later than" makes it clear that the right to amend continues without interruption until 21 days after the earlier of the events described in Rule 15(a)(1)(B).

‹ Rule 14. Third-Party Practice Up Rule 16. Pretrial Conferences; Scheduling; Management ›

Federal Rules of Civil Procedure Toolbox

- Wex: Civil Procedure: Overview